ISAAC GAMBRILL *vs.* FOREST GROVE LODGE, No. 4, INDEPENDENT ORDER OF GOOD SAMARITANS AND THE DAUGHTERS OF SAMARIA, of Anne Arundel County.

*Will—Construction—Dying without Heirs—Act of 1862, ch. 161—Fee Simple—Executory Devise.*

A will contained the following devise: "I give and bequeath unto my grandchildren, Peter and Pinkney, all my real estate, reserving half an acre for a burying-ground. * * . * In case either the said Peter and Pinkney die without heirs, his portion of the estate shall go to his mother, or, if both die, the whole shall go to the mother." Peter died intestate, unmarried and without issue, leaving his mother surviving him. HELD:

That under the Act of 1862, ch. 161, the word "heirs," should be construed to mean "lineal descendants," or "issue," the testator meaning to designate a definite failure of issue; and Peter took a fee simple, defeasible on the contingency of his dying without issue living at the time of his death, with a valid executory devise to his mother; and the contingency having occurred, his mother became entitled in fee simple to the real estate devised to him.

APPEAL from the Circuit Court for Anne Arundel County.

This was an action of ejectment brought by the appellee to recover the real estate in controversy. The appellant pleaded not guilty, and the appellee joined issue. The case was tried before the Court on an agreed statement of facts. From this statement it appears that during the life-time of Peter Griffith, certain equity proceedings were had, to which Jane Griffith was not a party, and by which she was not bound, in which Peter Griffith became possessed in severalty of that part of the land devised by the testator, Peter Gambrill, mentioned in the declaration. During his life-time Peter Griffith mortgaged said prop-

2               v. 66.

erty. The mortgage was foreclosed, and under the sale made thereunder, after Peter's death, the plaintiff became the purchaser, and thereby acquired all the right, title and interest of said Peter in said property. Jane Griffith, the mother of Peter, took possession of said property after his death, claiming the same under the will of her father, Peter Gambrill, and leased it to the defendant who is now in possession as her tenant. The case is further stated in the opinion of the Court.

*Exception.* The plaintiff prays the Court to rule as follows :

1. That under the will of Peter Gambrill, the two grandsons, Pinkney Gambrill and Peter G. Griffith took an estate in fee in the lands by said will devised to them.

2. Should the Court find on the agreed statement of facts, that the said Peter Gambrill, by his last will, devised a fee to his two grandsons, Pinkney Gambrill and Peter G. Griffith, in the real estate mentioned in his will, then the Court is asked to decide further and find in the said agreement of facts that the plaintiff is entitled to recover in this suit the real estate—the subject of this suit—and the sum of $27.50, for the mesne profits or damages against the defendant for the possession of the said land withheld by him from the plaintiff.

The defendant offered the following prayer :

That the Court rule as matter of law, that upon the agreed statement and the will of Peter Gambrill, their verdict must be for the defendant, as the executory devise to Jane Griffith, mother of Peter Griffith, is a valid limitation.

The Court (MILLER, C. J., and SMITH, A. J.,) granted the plaintiff's prayers, and rejected the prayer of the defendant. The defendant excepted. The Court gave judgment for the plaintiff for the land mentioned in the declaration, and $27.50 damages for mesne profits. The defendant appealed.

Gambrill *vs.* Forest Grove Lodge, No. 4, &c.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, RITCHIE, and BRYAN, J.

*William S. Bryan, Jr.,* and *George R. Gaither, Jr.,* for the appellant.

By an irresistible weight of authority it has been settled that at common law the words "dying without heirs" would mean an indefinite failure of heirs, and that any limitation by way of executory devise, expectant upon such a failure, would be void as being too remote.

But the Act of 1862, ch. 161, was passed for the purpose of changing this dogma of the common law, and expressly declares that in any devise of real or personal property, the words "die without issue," or "die without leaving issue," or "have no issue" or *any other words* which may import either a want or a failure of issue of any person in his life-time or at the time of his death, or an indefinite failure of issue, shall be construed to mean a want or failure of issue in the life-time, or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will.

If the limitation over had been "in case the said Pinkney and Peter die without issue," or if the words actually used, ("die without heirs") are by reason of the context, words of similar import, it seems clear that the statute would cause this Court to construe the limitation over as to happen upon Peter's dying without leaving issue living at the time of his death, and that the executory devise would consequently be valid, being limited upon an event which must occur, *if at all,* within a life or lives in being, and twenty-one years thereafter.

So that the whole question is, do the words "dying without heirs," in this case, where the limitation over is to *a collateral heir*—the mother—mean dying without issue?

On principle, apart from authority, it would seem clear that when the testator says, that if my grandson dies with-

out heirs, the property is to go to his mother, he must use the word heir in a narrower sense than its technical signification, otherwise the limitation over would be meaningless. *Mason vs. Johnson*, 47 *Md.*, 354-5; *Webb vs. Hearing, Croke Jac.*, 415; *Kent vs. Armstrong*, 2 *Halstead's (N. J.) Ch. Rep.*, 637; *Nottingham vs. Jennings*, 1 *P. Wms.*, 23; *Goodtitle vs. Pegden*, 2 *Term Rep.*, 720; *Porter vs. Bradley*, 3 *Term Rep.*, 143; *Parker & Thacher*, 3 *Levinz*, 70; *Morgan vs. Griffiths*, 1 *Cowper*, 234; *Fearne on Cont. Rem. & Ex. Dev.*, 466; *Gable vs. Ellender*, 53 *Md.*, 311.

As the law stood up to 1786, the date of the passage of the Act to Direct Descents, the limitation in this will to Jane Griffith would have been good as a contingent remainder, because by the words "dying without heirs," (meaning, as we have seen "dying without issue," or "heirs of the body,") an estate tail would, by implication, be created in the grandson Peter, and the limitation over would take effect as a remainder, expectant on the failure of heirs of the body of Peter. *Newton vs. Griffith*, 1 *H. & G.*, 127; *Hoxton vs. Archer*, 3 *G. & J.*, 198; *Mason vs. Johnson*, 47 *Md.*, 356.

When our Statute to Direct Descents was passed, it turned all estates tail into fee simple estates. Now, a remainder could not be limited after a fee simple, and the limitation over had to take effect as an executory devise, if at all. *Mason vs. Johnson*, 47 *Md.*, 356; *Dallam vs. Dallam*, 7 *H. & J.*, 220.

Prior to the Act of 1862, it could not have done this, because dying without heirs meant, in this will, an indefinite failure of issue, and was therefore too remote. But the Act of 1862, ch. 161, makes dying without heirs (*i. e.* issue) mean without heirs living at the time of the death of the first taker, and so makes the executory devise valid.

*F. Eugene Wathen*, and *Frank. H. Stockett*, for the appellee.

By the devise in this case the grandchildren took an estate in fee in the land devised, as tenants in common, although no words of perpetuity were added to the devise. 1825, *ch.* 119, *Art.* 93, *sec.* 305 *of the Code; Mason vs. Johnson,* 47 *Md.,* 348; *Estep vs. Mackey,* 52 *Md.,* 599; *Fairfax vs. Brown, &c.,* 60 *Md.,* 50.

The attempt to limit the estate so given by the devise over, in the nature of an executory devise, must fail and be void, as the contingency on which it is limited is too remote, for it was not to take place until after an indefinite failure of "heirs."  4 *Kent's Com.,* 273; 2 *Redfield on Wills,* 276-77; *Posey vs. Budd,* 21 *Md.,* 477; *Posey vs. Budd,* 22 *Md.,* 48; *Willis vs. Woodland,* 32 *Md.,* 101; *Mason vs. Johnson,* 47 *Md.,* 347; *Estep vs. Mackey,* 52 *Md.,* 593, 600; *Gable vs. Ellender,* 53 *Md.,* 312.

The principle applied against *perpetuities,* as shown by the foregoing authorities, has not been changed by the provisions of the Act of 1862, ch. 161, (Art. 49, sec. 9, Rev. Code,) so far as the words used in the devise in the present case.

The provisions of that law were taken from the English Statute, 1 Vic., ch. 26, sec. 29, (see 6 *Chitty's Statutes,* 939,) and never were designed to apply to estates created or determined by the words such as are used in the devise in the case now before this Court.

The words or phrases in wills intended to be provided against in that Act, and thereby actually provided against, were "die without issue," "die without leaving issue," or "have no issue." or any other words which may import either a want or a failure of "issue," or an indefinite failure of "issue."

This word "issue" is the only word used as applicable to protect contingent estates, or executory devises created by wills, and to arise in the event of the death of the devisee childless. The word "heirs" is not used in the law, nor even "heirs of the body," which may mean "issue."

This word "issue" has a clear, distinct and definite meaning, literal, as well as *legal*, and never is applied to mean "heirs," unless by the terms of the devise the intent of the testator is so clearly manifested, that there is no reasonable escape from it.

The words of the devise now before this Court, "die without heirs," are entirely different, and clearly by all the authorities mean a general failure of heirs, and if the Legislature designed to cover such devises, it is a clear *casus omissus*, for the word "heirs" has a meaning clear and distinct from "issue," as well in law as by general acceptance.

The English Courts, in construing their Statute, have decided that the terms therein used, did not apply to devises where the word "heirs" was used. *Dawson vs. Small, L. R.*, 9 *Ch. App. Cases*, 653.

The Legislature of New York providing for such cases, was more careful, for the words "without heirs" or "heirs of his body," are added, and the law declares that the word "heirs" or "issue" shall be construed to mean *heirs* or issue living at the death of the person named as ancestor. 3 *New York Rev. Stats., p.* 2177, *sec.* 22.

The word "heir" or "heirs" has a meaning not only definite and clear of itself, distinct from the word "issue," but is a term especially favored and protected by the law —not considered ambiguous as is the word "issue," but covering a much wider class, and always gives way with greater difficulty than the word "issue." *Lees vs. Mosley,* 1 *Younge & Coll. Exch.*, 589, 609; *Rogers vs. Rogers*, 3 *Wend.*, 521; *Estep vs. Mackey, &c.*, 52 *Md.*, 593; 2 *Redfield on Wills*, 63; *DeBeauvoir vs. DeBeauvoir*, 15 *Simons*, 163.

Whenever a testator uses words which are clear and unambiguous, and which also have a recognized *legal* meaning in accordance with their general meaning, and which are not contrary to the manifest intent of the testa-

Gambrill *vs.* Forest Grove Lodge, No. 4, &c.

tor as clearly evidenced by other expressions in the devise, Courts will not by intendment give them a different meaning.

In the present case the testator having used the word "heirs," no other word can be supplied, and it must be considered to mean "heirs" in the literal and legal sense of that word, and cannot by implication or intendment be construed as coming within the provisions of the Act of 1862, ch. 161. *Shreve vs. Shreve*, 43 *Md.*, 382; *Mason vs. Johnson*, 47 *Md.*, 347; *Gable vs. Ellender*, 53 *Md.*, 312; *Heald vs. Heald*, 56 *Md.*, 303.

BRYAN, J., delivered the opinion of the Court.

Peter Gambrill by his last will and testament, executed in November, 1862, made the following devise: "I give and bequeath unto my grandchildren, Peter and Pinkney, all my real estate, reserving half an acre for a burying ground. * * * * In case either the said Peter and Pinkney die without heirs, his portion of the estate shall go to his mother, or if both die, the whole shall go to the mother." The will was duly admitted to probate, January, 1865, after the death of the testator. It was shown by an agreed statement of facts, that Peter, one of the grandsons mentioned in the will, died in the spring of 1884, intestate, unmarried and without issue; and that his mother, Jane Griffith, the daughter of the testator, survived him, as did also two brothers. In an action of ejectment brought by the appellee against a tenant of Jane Griffith, the question was whether the executory devise to her was valid.

By the common law the words "die without heirs" used in this will had a perfectly clear and well settled construction. A person was said to die without heirs, if his heirs became extinct at any time, however remote the period might be in the future. And this condition of things was called an indefinite failure of heirs, in contra-

distinction to a failure or extinction within some specified period, which was called a definite failure of heirs. According to the rules governing executory devises, they are not valid unless the contingencies on which they are limited must happen, if at all, within a life or lives in being and twenty-one years and a fraction of a year thereafter. Therefore, limitations after an indefinite failure of heirs are invalid, because the contingency on which they are limited, might happen at a remote period in the future, after the lapse of many generations. But limitations after the failure of heirs, within the term of a life or lives in being and twenty-one years and a fraction afterwards, are not obnoxious to this objection, and are perfectly good and valid. In *Dallam vs. Dallam,* 7 *Harris & Johnson,* 220, and *Newton vs. Griffith,* 1 *Harris & Gill,* 111, this Court made an elaborate examination of the authorities bearing on this subject, and declared the result as we have stated. In most of the cases in which questions of this kind have been adjudicated, the words upon which the questions arose were such as these : "die without issue," "die having no issue" or, other equivalent phrases containing the word "issue." But most certainly so far as the question of indefiniteness or remoteness was concerned, it could not make the least difference whether the word "heirs" or the word "issue" was employed. And we may observe that in the great and leading case on this subject (*Newton vs. Griffith,*) the devise was that in case the testator's two sons, "Joseph and George should decease, leaving no *lawful heirs of their bodies,* then and in that case," the limitation was to the testator's three daughters, and the question which received the Court's most earnest and particular attention was whether these words imported a failure of issue living at the death of the surviving son, or an indefinite failure of issue; and the decision was that they were to be construed as meaning an indefinite failure of issue.

Gambrill *vs.* Forest Grove Lodge, No. 4, &c.

The Act of 1862, chapter 161, made a very important change in the law on this subject. It provided, "that the words 'die without issue,' or 'die without leaving issue,' or 'have no issue,' or any other words which may import either a want or failure of issue, of any person in his lifetime, or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the life-time, or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will." It will be perceived that the object of this statute was not to settle the construction of ambiguous words, but to change a construction which had already been firmly established. The Court say in *Dallam vs. Dallam,* that this construction is established by the authority of more than fifty adjudged cases. 7 *Harris & Johnson,* 236. And this opinion is solemnly and explicity approved in *Newton vs. Griffith,* 1 *Harris & Gill;* and has never been in the slightest degree questioned. The devise to Peter and Pinkney unaffected by the limitation over to their mother, would give them fee simples by force of the Act of 1825, chapter 119. If *either* of them should die without heirs, his portion of the estate was limited to Jane Griffith their mother; and the will proceeds to state : "or if *both* die the whole shall go to the mother." It will be observed that the mother was to take the portion of either son, who should die without heirs, notwithstanding there should be a surviving brother. As he could not die without heirs if his brother or mother survived him, it is manifest that the word "heirs" could not have been used in the will, in the technical sense.

It cannot be questioned that when it is apparent that technical words in a will are not used in their legal signification, such an interpretation must be given to them as will give effect to the testator's intention. Taking these words in their popular sense, the meaning of the will

would be that if Peter should die without children or descendants, the mother should have the land. And it is very difficult to suppose that the testator meant anything else. If we refer to decided cases, we find that similar constructions have been given to such expressions. In *Nottingham vs. Jennings*, 1 *Peere Williams*, 23, this was the case: J. S. had three sons, A, B, and C, and devised his lands to B, (his second son) after the death of his mother, to hold to him and his heirs forever; and for want of such heirs, then to his (the testator's) right heirs. Lord HOLT, in delivering judgment, said: "in the present case the word (*heirs*) can import nothing more than issue; for how could he possibly die without heir, living the other brother? So that the word (*heirs*) must be qualified, as suppose in this case the lands had been devised to B and his heirs, and if B die without issue then to another, this without all doubt would have been an estate tail." In *Goodtitle vs. Pegden*, 2 *Term Reports*, 720, in discussing the limitation of a term for years by a will, the Court say: "This is a chattel interest limited to T. B. Peake, and the heirs lawful of him forever; but in case he should happen to die, and leave no lawful heir, then over, &c. Now it is apparent on the will, that the testator by 'lawful heirs' meant 'heirs of the body,' and, leaving no lawful heirs' must be confined to 'leaving no issue at the time of his death.'" In *Gable vs. Ellender*, 53 *Md.*, 313, which was also a limitation of leasehold property by will, this Court said: "It is very clear from the context, that the testatrix used the word 'heirs' in the sense of 'heirs of the body' or 'issue of the body.'" In *Kent vs. Armstrong*, 2 *Halstead's* (*N. J.,*) *Chancery Reports*, 637, a testatrix devised and bequeathed all the rest and residue of her estates, real, personal and mixed to her daughter Eliza Rosetta, " to be by her possessed, enjoyed and occupied, to her, her heirs and assigns forever," with the proviso, "but if my said daughter Eliza should die without

Gambrill *vs.* Forest Grove Lodge, No. 4, &c.

heirs and intestate, then my will is, that all the estate herein above devised to her shall vest in my son Charles M. Armstrong, and my daughter Mary Salter, and their heirs to be divided between them, share and share alike." The Court said : "Die without heirs" is to be construed as the counsel conceded it to mean, "without issue." These authorities abundantly shew the facility with which the word "heirs" will be construed to mean issue, when the intention of a testator requires such a construction. Many cases may be cited where the intention did not require that the word should receive this signification; but no case can be found which denies the universal and inflexible rule that the word must bear the meaning which the testator intended to give it, and that this meaning must prevail over its technical import and effect.

Taking then the word "heirs" in the clause of the will in question to mean "lineal descendants" or "issue," we have the very words, which the Act of 1862 was intended to construe. The case comes entirely within the letter and spirit of the Act. By its express terms, we are required to say that the testator meant to designate a definite failure of issue; that is to say, he intended that the land should go to Peter's mother, Jane Griffith, in case Peter should die without lineal descendants living at the time of his death. In *Dallam vs. Dallam*, it was decided that where there is a devise to a man and his heirs, with a limitation over after a definite failure of issue, the estate of the first devisee is not cut down to a fee tail, but that it is a fee simple defeasible on the contingency mentioned, and that the limitation over is good by way of executory devise. The Court speak of this as one of the "rules for the construction of wills, so well settled, and so long acted upon, as to have become maxims of the law that are not now to be questioned." And Judge DORSEY in his separate opinion, said: "No case of authority has been referred to in the argument, and it is believed that

none can be found, where a devise in terms importing a fee, with a limitation over after a definite failure of issue of the first devisee, has been held to invest him with an estate tail only." 7 *Harris & Johnson*, 244. And he also says: "The principle which converts a devise in fee with a limitation over after an indefinite failure of issue, into an estate tail, has no application to a devise in fee with a limitation over after a definite failure of issue." Our conclusion therefore, is that Peter took a fee simple defeasible on the contingency of his dying without issue living at the time of his death, with a valid executory devise to his mother. The contingency having occurred, Jane Griffith became entitled in fee simple, to the real estate devised to Peter.

The defendant's prayer being in accordance with this view of the law ought to have been granted, and the plaintiffs' prayers, holding the contrary, should have been rejected. We may refer to *Mason vs. Johnson*, 47 *Md.*, where a testator devised land to his daughters, Mary and Lavinia, to be equally divided between them, and in case either of them should die without an heir of the body lawfully begotten, the share of the one so dying was devised to the survivor. It was held that the limitation over to take effect upon the dying without an heir of the body was valid under the Act of 1862.

We have been referred by the appellee to *Dawson vs. Small*, 9 *Law Reports,* *Chancery Appeals*, 693. The English Statute (1 *Victoria, chapter* 26, *section* 29,) from which ours is taken, excludes from its operation a prior estate tail; and a preceding gift, which, without any implication arising from the words denoting a failure of issue would be a limitation of an estate tail. In the case in question, the Court decided that the first devisee took an estate tail, and that therefore the statute did not apply. The Act of 1862 does not contain any such words of ex-

Gambrill *vs.* Forest Grove Lodge, No. 4, &c.

clusion.  The other points of difference in the present case are sufficiently obvious.

*Judgment reversed, and*
*judgment for appellant*
*under statement of facts.*

(Decided 24th June, 1886.)


Chief Judge ALVEY, and Judge ROBINSON, dissented, and the former filed the following opinion :

The opinion of the majority of the Court in this case is so radically different from the opinion that I entertain, that I feel it to be my duty to enter my dissent, and to assign the reasons upon which my opinion is formed.

The question involved arises upon the construction of the will of Peter Gambrill, deceased.  The will bears date the 12th of Nov., 1862, and was admitted to probate in Jan., 1865.  By the will the testator devised unto his two grandchildren, Peter Griffith and Pinkney Gambrill, all his real estate, reserving half an acre for a grave-yard. He directed that the real estate so devised should remain in the hands of his executor until his two grandsons, the devisees, should arrive at age; and, by a subsequent independent clause, he devised, that "in case either the said Peter or Pinkney die without *heirs*, his portion of the estate shall go to his mother, or if both die, the whole shall go to the mother."

Peter Griffith, one of the devisees, died intestate and without ever having had issue, and left his mother and two brothers surviving him.  The mother has entered into possession and claims the property, by virtue of the devise over to her, upon the death of Peter Griffith.  The Court below ruled that, under the will of Peter Gambrill, the two grandsons, Peter Griffith and Pinkney Gambrill, took a fee simple estate in the lands devised to them, and con-

sequently the devise over to the mother was without effect; and in that opinion I entirely concur.

As will be observed, in the devise to the two grandsons there are no words of limitation added. But, by the statute, (Act of 1825, ch. 119, Code, Art. 93, sec. 305,) such devise is declared to have the effect and operation of a devise in fee simple, "unless it shall appear, by devise over, or by words of limitation or otherwise, that the testator intended to devise a less estate and interest." Here, it is contended, the devise to the two grandsons, whereby an absolute, indefeasible estate in fee would have passed, if unaffected by any other clause in the will, was curtailed or restricted by the subsequent clause, wherein the land was devised over to the *mother*, in the event of the grandson dying without *heirs*. According to the contention of the appellant, the words importing the dying without *heirs generally*, as the event upon which the devise over was designed to take effect, must, by reason of the fact that the devise over was to the mother of the first devisee, be reduced to and taken to mean a *dying without issue* of the first taker; and then, by operation of the Act of 1862, ch. 161, those substituted words should be construed and taken to mean, "a want or failure of issue in the life-time, or at the time of the death of the first devisee;" and thus make the devise over to the mother good. This construction I cannot for a moment adopt.

The technical word "heirs," or words "heirs of the body," and the word "issue," are certainly not convertible terms, and are not always of the same general legal import; for while the words, "heirs of the body," are strictly words of limitation, the word "issue" is of equivocal import, being either a word of limitation or a word of purchase, as will best accord with the supposed intention of the testator, as deduced from the terms of the will. *Fearne on Cont. Rem. & Ex. Dev.*, 106, 117, 149, 152-3, 163-4; *Horne vs. Lyeth*, 4 *H. & J.*, 439; *Chelton vs. Henderson*, 9 *Gill*, 432; *Tongue*

*vs. Nutwell,* 13 *Md.,* 416. It is true, where the word "issue" is construed as a word of limitation, it then becomes synonymous in meaning with the words "heirs of the body;" but the word "heirs" is the more strict and technical term of limitation both in deeds and wills. And the word "heirs" generally may be restrained to mean "heirs of the body."

As a general rule, all the authorities agree, that a devise over, as in this case, upon a dying without *heirs* of the first devisee, is void, as being too remote; yet this general rule is not without exceptions; for if the person to whom the limitation over is made, be a relation of and capable of being heir to the first devisee, as, in this case, the mother of the first taker was capable of being, in such case, the first devisee takes, according to the common law rule of construction, only an estate tail; as the limitation over to such relation plainly denotes that only lineal descendants could have been intended. This principle of construction is stated, and fully illustrated, by *Fearne* in his work before referred to, at pages 466, 467. See also, *Doe vs. Black,* 6 *Taunt.,* 485. Indeed, as said by LORD KENYON, in *Porter vs. Bradley,* 3 *T. R.,* 145, "a long string of cases may be cited in order to show that where an estate is limited to a man and his heirs forever, and if he die without leaving heirs, then to his brother, or any person who may be his heir, those words shall not have their full legal operation, but shall be restrained to *heirs* of a particular kind, namely, *heirs of the body.*" A case aptly illustrating this principle is that of *Tyte vs. Willis, Cas. Temp. Talb.,* 1. And though the generality of the word *heirs* be thus restrained, the effect of our statute to regulate descents is to convert this estate tail into an estate in fee simple.

Such then being the well established legal effect and operation of the word *heirs,* as used in the will before us, upon what principle is it, that this meaning and legal effect of the words, "die without heirs of the body," shall

be overthrown, and the words "die without issue," with a definite relation to the time of death of the first devisee, substituted instead? It is contended that this is the effect of the Act of 1862, ch. 161; but, in my judgment, the Act of 1862 has no application to the case whatever. If, instead of the devise over being upon the first devisee dying without heirs generally, it had been upon the first devisee dying without heirs of his body, by express terms of the will, I do not suppose that any one would have suggested that the Act of 1862 applied. Yet the effect of the decision of the majority of the Court is to render the devise a case of definite failure of issue, notwithstanding the employment of a word which, in this devise, is of the exact definition of the terms "heirs of the body," which, by operation of the statute, confer an estate in fee-simple. By the Act of 1862, ch. 161, the Legislature certainly did not undertake or intend to disturb, or in any way change, the settled meaning and legal effect of the strict technical terms, *heirs, or heirs of the body;* nor did it undertake to declare that *all* terms, whereby an estate tail at the common law was created, should be construed into a definite failure of issue, or that such terms should be so changed or modified in their legal effect and operation as to make good the devise over. But the Legislature, in the Act referred to, was dealing with and settling the legal construction of the various forms and modes of expression of the event of the first devisee dying without issue, upon which a devise over might depend. Before the Act, much controversy existed, as the numerously reported cases will show, in regard to the construction of the various forms and modes of expression referring to the death of the first devisee without issue, as the event upon which the devise over was intended to take effect; and a diversity of construction of such terms existed, as they were applied to gifts of real or to personal estate. It was supposed that, by the construction adopted by the Courts, the real intention of the

testator was often defeated; and it was to fix as definite and certain the legal signification of the terms enumerated in the Act, "or any other words which may import a *want or failure of issue,*" that the Act was passed; and not to change or restrict the legal meaning and import of the words *heirs of the body;* for in regard to those terms there had been no doubt as to their well settled construction. And the legal meaning imposed by the Act upon the terms mentioned therein only prevails, where a "contrary intention shall not appear by the will." It is therefore only where there is some doubt or ambiguity in the use of those terms, in respect to the intention of the testator, or where it does not appear from the terms of the will, that an indefinite failure of issue was intended, that the Act applies.

This Act of 1862, ch. 161, was copied almost literally from the English Statute of Wills, of 1 Vict., ch. 26, sec. 29, passed in 1837. By the English Statute it is provided in the 29th section, "that in any devise or bequest of real or personal estate the words 'die without issue,' or 'die without leaving issue,' or 'have no issue,' or any other words which may import either a want or failure of issue of any person in his life-time or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the life-time or at the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will, *by reason of such person having a prior estate tail, or of a preceding gift, being without any implication arising from such words,* a limitation of an estate tail to such person or issue, or otherwise." Our Act of 1862 provides, that "In any devise or bequest of real or personal estate, the words 'die without issue,' or 'die without leaving issue,' or 'have no issue,' or any other words which may import either a want or a failure of issue, of any person in his life-time, or at the time of his death, or an indefinite failure of his

issue, shall be construed to mean a want or failure of issue in the life-time, or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will."

In the English Act, as will be observed, there are amplifying words employed which exclude the operation of the Act by mere implication, in case where · an estate tail has been *previously* given; thus avoiding a possible inconsistency that might arise on the face of the will, as to the effect of different independent devises or clauses thereof. But that provision can make no difference in the construction of the two Acts, so far as the question in this case is concerned.

The 29th section of the English Act has been under construction by the English Courts, and they have held that the words "dying without heirs of the body," or "there being no heirs of the body," mean an indefinite failure of such heirs, and that the Act has no application to such terms.

The first case that occurred, presenting the question, so far as appears from the reports, was that of *Harris vs. Davis*, 1 *Coll. C. C.*, 416, decided by Vice-Chancellor KNIGHT BRUCE, in 1844. See for statement of this case, 3 *Jarm. on Wills*, 341. But the more recent case is that of *Dawson vs. Small, L. R.*, 9 *Ch. App.*, 651. In this latter case the testator, in 1846, gave his residuary real and personal estate to J. S. L., and the heirs male of his body lawfully begotten forever; but in case of his death without such heirs male of his body, then the property to go to P. C. L. in the same manner; and if P. C. L. should die without heirs male of his body lawfully begotten, then the property to go to J. S. A. in the same manner. Vice-Chancellor BACON, in whose Court the case arose, held, that J. S. L. took an estate tail in the real estate, and that the 29th sect. of the Wills Act did not apply; and on appeal his decision was affirmed. In the Court of Appeal, Lord

Justice JAMES, in his opinion, said: "Mr. Chitty argued that Sect. 29 of the Wills Act applied, and that the gift over was in the event of J. S. L. dying without leaving heirs male living at his death; but I am of opinion that thé Act has no reference to such a case. The Legislature there deals with 'die without issue,' 'die without leaving issue' and similar ambiguous expressions; but here there is no ambiguity, the gift over is on failure of heirs male of the body." And Lord Justice MELLISH was of the same opinion.

In the present case, as I have shown, the words, "die without heirs," are restricted to mean "die without heirs of the body," and such being the case, it falls immediately within the decision of *Dawson vs. Small*, just cited. I think that case was well decided; and I regret that the decision of the majority of the Court in this case should be so entirely in conflict with it. That there may be titles that will be disturbed or unsettled by the decision made in this case, is a result that I seriously apprehend; for, so far as I am informed upon the subject, it never has been supposed among the profession that the Act of 1862 applied to a case like the present. Moreover, it is certainly very remarkable, if the Legislature had intended to restrict the technical and well defined terms, "dying without heirs of the body," to mean and import a definite failure of issue, that the Act should not have so provided. And it is equally remarkable, if such had been the intention of the Legislature, that in the re-enactment of the provisions of the Act of 1862, by the last Legislature, making them apply to deeds of conveyance, all mention of the word "heirs" should have been entirely omitted. Act of 1886, ch. 236. This can only be accounted for upon the rational theory and construction, that the Legislature never intended so to restrict the words "dying without heirs of the body."

It is supposed that the construction adopted by the majority of the Court has support in the case of *Mason*

*vs. Johnson,* 47 *Md.,* 347. I do not so read that case. I am not required to say whether I think all the propositions advanced in the opinion in that case are well founded or not; but it is quite clear that the case differs essentially from the present. Besides, what was there said ·in regard to the effect of the Act of 1862, upon the devise over was quite unnecessary to the decision that was actually made. This is made manifest both in the argument of counsel (*id.* 352, 353,) and in the opinion of the Court, (*id.* 357, 358.) That was a suit by a surviving husband, claiming, by virtue of his supposed marital rights, an interest in the real estate owned by the wife in her lifetime, and which came to her by devise with a limitation over; but whether the wife took more than a life estate in the property, under the devise to her, the Court refrained from deciding; for, as said by the Court, if she had a larger estate, as contended by the husband, it could be at best but a fee defeasible upon the happening of an event that had actually occurred, and therefore the husband could not be entitled.

For the reasons I have stated, I am of opinion that the judgment of the Court below ought to be affirmed.

(Filed 15th July, 1886.)