ANNA LAURA LEDNUM, formerly ANNA LAURA CALLA-
HAN, by her husband and next friend, J. FRANK
LEDNUM *vs.* GEORGE T. CECIL, WILLIAM MILTON
CECIL, and others.

*Construction of Will— Words "die without heirs," construed
to mean "die without issue"—Act of 1862, ch. 161, (Code,
Art. 93, sec. 317)—Defeasible fee—Limitation over—In-
restment to Protect interest of Remaindermen.*

By a clause of the will of A. C. made in May, 1870, he devised as
follows: "I give, devise and bequeath to my daughter A. L.,
and to her heirs, all my real estate in Queen Anne's County,
subject to her mother's third; but if my daughter, the said A.
L., should die without heirs, I give and devise the said real estate
* * * to my brother J. C., and my sister R. C., share and share
alike, and in the event of their death, then to their children,
respectively, to be divided in equal shares between them." By
the fourth clause of the will the testator devised to his wife as
follows: "I also give and devise to my said wife, the one-third
of the rents and profits of all my real estate in Queen Anne's
County during her life." HELD:

1st. That under said will A. L. was entitled to the fee in the real
estate devised to her, defeasible on the contingency of her dying
without issue living at the time of her death, subject to the
right of the testator's widow in and to one-third of the rents
and profits thereof during her life; and that in the event of
the death of A. L. without issue living at the time of her death,
the said real estate belonged to the respective children of the
testator's deceased brother and sister, J. C. and R. C., share
and share alike.

2nd. That the testator could not have intended a general failure
of heirs at his daughter's death, for he made the limitation over
on the failure named to her uncle and aunt and their children,
who, if she had no descendants, would be her heirs-at-law.

3rd. That giving the word "heirs" in the connection used, the
meaning which the testator manifestly had in his mind, the

contingency provided for was the "dying without issue," and the will was to be read as if he had used that language; and the case was brought directly within the provisions of the Act of 1862, ch. 161, (Code, Art. 93, sec. 317) which provides that: "In any devise or bequest of real or personal estate, the words 'die without issue,' or 'die without leaving issue,' or any other words which may import either a want or a failure of issue of any person in his life-time, or at the time of his death, or an indefinite failure of issue, shall be construed to mean a want or failure of issue in the life-time or at the death of the person, and not an indefinite failure of issue, unless a contrary intention shall appear by the will."

4th. That the limitation over to the uncle and aunt and their children, being good under the statute, it was proper that the proceeds of the sale of the property should be invested to protect the interests of the remaindermen.

APPEAL from the Circuit Court for Queen Anne's County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., MILLER, BRYAN, IRVING, FOWLER, McSHERRY, and BRISCOE, J.

*George M. Russum,* for the appellant.

*Edwin H. Brown,* and *John B. Brown,* for the appellees.

IRVING, J., delivered the opinion of the Court.

Andrew Callahan of Queen Anne's County, in this State, made his will on the last day of May, 1870, and the same was admitted to probate on the 14th of June of the same year. By the fifth clause of his will he devised as follows: "I give, devise and bequeath to my daughter, Anna Laura and to her heirs, all my real estate in Queen Anne's County, subject to her mother's third, but if my daughter, the said Anna Laura should

die without heirs, I give and devise the said real estate
(consisting of the farm whereon I now reside, and the
farm where Henry Carter resides, containing about four
hundred and seventeen acres in both tracts) to my brother,
John Callahan, and my sister, Rebecca Cecil, share and
share alike, and in the event of their death then to their
children respectively, to be divided in equal shares be-
tween them."

By the fourth clause of the will the testator devises
to his wife as follows: "I also give and devise to my said
wife, Sarah Anne, the one-third of the rents and profits
of all my real estate in Queen Anne's County during her
life."

The bill in this case was originally filed by Anna Laura
Callahan, a minor, by her next friend, Wm. W. Busteed,
against her mother, and all parties claiming any inte-
rest in the property devised to her, to procure a sale
thereof, as being for her interest and advantage, and the
advantage of all parties.    The question now presented
is by interlocutory petition of Anna Laura Callahan,
now Lednum, by her husband and next friend.    It avers
the filing of the bill, which averred that the complainant
was at least entitled to a defeasible fee in the estate,
and that it was for the interest of all the parties to have
the property sold, and the proceeds invested so as to
enure to the interest of all the parties interested in it;
that all parties interested were summoned to answer,
and after due proceedings the property was decreed to
be sold, and has been sold, and that after deducting all
expenses, the sum of five thousand nine hundred and
fifty-five dollars and twenty-three cents remains in the
hands of the trustees for investment or disposition, of
which no order has yet been passed.    The petition then
claims that she is absolutely entitled to this fund as the
owner of the estate in fee, and prays the Court to con-
strue the will and determine the rights of the parties

under it.    An order was passed requiring the defend-
ants to answer the petition, and afterwards, by agree-
ment of parties reserving the right of appeal, a *pro
forma* decree was passed on the 18th of March, 1892,
"that Anna Laura Lednum, wife of J. Frank Lednum,
is entitled to the fee in the real estate in the above
entitled cause, defeasible on the condition that she die
without issue living at the time of her death, subject
to the right of Sarah Ann Callahan, widow, in and to
one-third of the rents and profits thereof during her
life; and that, in the event of the death of said Anna
Laura Lednum without issue living at the time of her
death, the said real estate in the proceedings mentioned,
and the proceeds of sale thereof, be and they are hereby
adjudged and decreed to be the property of George T.
Cecil, Amanda Cecil and Milton Cecil, children of
Rebecca Cecil, a deceased sister of Andrew Callahan,
the testator, and George Callahan, Mary Johnson and
Sallie Moore, children of John Callahan, a deceased
brother of said testator, share and share alike."

The decree further proceeds to order investment of the
fund arising from the sale so as to protect the interests
of all the parties mentioned in the decree.

We think this decree unquestionably right.    The tes-
tator gave his real estate to his daughter and her heirs.
The technical language necessary to create an estate in
fee was used by him, and effected his purpose to give
the daughter a fee.    By the succeeding language he
attempted to make that fee defeasible upon a contin-
gency, which he mentions, and the question is has the
testator effected, by the language employed, his manifest
purpose.    He says, "but if my daughter, the said Anna
Laura should die without heirs," then he gives the estate
to his brother and sister, share and share alike, and
"their children respectively, to be divided in equal
shares between them."

As a general rule, all authorities agree that a limitation over upon the dying *"without heirs"* of the first taker is void for remoteness. This rule, however, is not without exception, for if the person to whom the limitation over is made is such person as is capable of being heir to the first taker, only an estate tail will be taken, because the testator has indicated that he means the failure provided for to be of heirs of the body or lineal descendants—the issue of the first devisee. *Fearne on Remainders,* 466–67; *Porter vs. Bradley,* 3 *Term R.,* 145; *Gambrill vs. Forrest Grove Lodge, No.* 4, &c., 66 *Md.,* 25. Here the testator could not have intended a general failure of heirs at his daughter's death, for he makes the limitation over on the failure named to her uncle and aunt and their children, who, if she had no descendants, could be and would be her heirs-at-law. Giving the word *"heirs"* in the connection used the meaning which the testator, manifestly, had in his mind, the contingency provided for was the "dying without issue," and the will is to be read as if he had used that language; and the case is brought directly within the provisions of the Act of 1862, ch. 161, now codified as section 317 of Art. 93 of the Code of 1888. It reads thus: "In any devise or bequest of real or personal estate, the words 'die without issue,' or 'die without leaving issue,' or any other words which may import either a want or a failure of issue of any person in his life-time, or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the life-time or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will." We have already said that the will shows on its face that the testator did not mean an indefinite failure of heirs or issue. This Act has been construed and applied several times; and this case falls strictly within the rulings of this Court on

the subject.   *Mason vs. Johnson, et al.,* 47 *Md.,* 355; *Gambrill vs. Forrest Grove Lodge, No.* 4, 66 *Md.,* 17. The limitation over to the uncle and aunt and their children, in the event of the appellant dying without issue, as hereinbefore stated, being good under the statute, the Court was clearly right in directing the investment to be made so as to protect the interests of the remaindermen.   It is also clear from the will that the testator designed that the wife should have an income during life, and it was right that she should be allowed one-third of net revenue from the investment ordered to made, during her life.   The decree must be affirmed, and the costs of the proceedings will be allowed from the fund.

*Affirmed and remanded.*