SAMUEL WEYBRIGHT, Executor, etc., vs. WILLIAM
H. POWELL and EMMA S. POWELL.

*Devise and Legacy—Gift of Real and Personal Property to One With
a Limitation Over Upon His Dying Without Bodily Heirs.*

Where real and personal property is given to one by will and there is
a limitation over upon his death without *bodily heirs*, the gift is
within *Code*, Art. 93, sec. 317, because equivalent to a dying without
issue, and means a failure of issue at the time of the death of the
devisee and not an indefinite failure of issue.   The devisee and leg-
atee in such cases takes a fee in the land and the entire interest in
the personalty, defeasible upon his death without issue, and is en-
titled meanwhile to the possession of both the real and personal
property.

Appeal from a *pro forma* decree of the Circuit Court for
Carroll County, by which it was adjudged " that the words
' dies without bodily heirs,' in the following clause of John
Weybright's will, now before this Court for construction,
viz : ' *Item.*—Nevertheless, the said Emma S. Weybright

dies without bodily heirs, my will is then that said real estate and personal property thus described shall relapse to my son, Samuel Weybright, and his heirs, for their purpose and benefit, but not until her mother's death,' vests in the said Emma Weybright, now the wife of William H. Powell, an absolute *fee-simple* estate in the house and lot in the village of Double Pipe Creek, Carroll County, and the corner lot in Keysville, containing about 9–16 of an acre of land, and the field adjoining said lot in Keysville, containing 5 ½ acres of land, and all designated in ' Item 1st ' and ' Item 2nd ' of said will, and also the house and lot in Double Pipe Creek and known as the blacksmith stand and designated in the paragraphs of said will numbered ' 5th ;' and that the personal property bequeathed by said will to said Emma S. Weybright, now the wife of William H. Powell, was given to her absolutely and without any limitations or qualifications whatever ; and that said Emma S. Powell is now entitled to the possession of said real and personal estate devised and bequeathed to her in and by said will, without any reservation in fee and absolutely, and that said Samuel Weybright is directed and decreed to surrender and deliver to said Emma S. Powell all the personal property bequeathed to her by said will."

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, and Boyd, JJ.

*Francis Neale Parke* (with whom was *Harry M. Clabaugh* on the brief), for the appellant.

*Jas. A. C. Bond* and *D. N. Henning* (with whom were *Armstrong & Scott* and *John M. Roberts* on the brief), for the appellees.

Boyd, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* decree construing the last will and testament of John Weybright, which was executed in 1887. The testator bequeathed to his wife one

thousand dollars, in cash, and certain goods and chattels absolutely, and eighteen shares of stock in the First National Bank of Westminster, Md., for her use and benefit during her natural life. He also devised to her, for life, certain real estate. He left to his son, the appellant, four thousand dollars subject to a deduction for money due by him; and to his daughter, the appellee, he gave the real estate and bank stock left to his wife, for life, adding after each item "not to take effect until after the death of her mother," and then gave her certain other real estate and personal property in addition to what was left to her mother for life.

Following the devises and bequests to his daughter, who is now Emma S. Powell, is this clause : " *Item.*—Nevertheless the said Emma S. Weybright dies without bodily heirs, my will is then that said real estate and personal property thus described shall relapse to my son, Samuel Weybright, and his heirs, for their proper use and benefit. *But not until her mother's death.*"

He directed his executor, who was his son, to collect all debts due his estate and pay his debts as soon as possible, and to sell his other property, real or personal, not disposed of by his will, to the best advantage, and apply the proceeds to the augmentation of his estate, and then added the following clause: "After my debts and expenses and all of the above legacies are all paid, should there be any money left of my estate, my will is that said money shall then be equally divided between my two children, that is to say, Samuel Weybright and Emma S. Weybright, share and share alike."

The clause in the will that has given rise to this controversy, is the one above. " Nevertheless the said Emma S. Weybright dies without bodily heirs," etc. An agreement in the record states that the widow departed this life in December, 1892, about a year after the death of the testator, and that the executor was allowed in his first account passed in the estate to retain the stock in the First National

Bank of Westminster (which had been left to Mrs. Wey-
bright for life, and then to Mrs. Powell), and the stock of
the Westminster Saving Institution (which was left to Mrs.
Powell), subject to the provisions of the will.    It is
admitted in the answer that Mrs. Powell had an infant child,
but it is contended that the words, " dies without bodily
heirs," mean without bodily heirs living at the time of the
death of Emma S. Powell, and that the executor is entitled
to retain the property until her death.    The Court below,
by the *pro forma* decree, adjudged and decreed that those
words vested in Mrs. Powell an absolute fee-simple estate,
in the real estate left her, and that the personal property
bequeathed to her was given to her absolutely without any
limitations or qualifications whatever, and that she is now
entitled to the possession of the real and personal estate.
Samuel Weybright, the executor, was directed to surrender
and deliver to her all the personal property bequeathed to
her.

The question to be determined, therefore, is what effect,
if any, that qualifying clause had upon the bequest and
devises to Mrs. Powell.   There is nothing in the language
of the devises and bequests themselves which in anywise
limits or qualifies them, excepting in the 1st, 2nd and 3rd
items, which conclude with the statement, " not to take
effect until after the death of her mother "—those items
being applicable to the real estate and national bank stock
given to Mrs. Weybright for life—and but for this clause in
the will now in controversy, the daughter's estate and
interest in the property given her would now be absolute,
her mother being dead.

It is conceded by the appellant that prior to the Act of
1862, ch. 161 (Art. 93, sec. 317 of the Code), the words,
" dies without bodily heirs," without anything in the will to
modify or restrict their meaning, would have meant an in-
definite failure of issue and the devise over would have
depended upon too remote a contingency for the executory
devise to be good, and hence Mrs. Powell would have taken

a fee-simple in the land devised to her, without any restriction, and an absolute estate in the personalty. But it is contended that the Act of 1862 does apply and remove that difficulty. It provides that ''In any devise or bequest of real or personal estate, the words ' die without issue ' or ' die without leaving issue,' or any other word which may import either a want or a failure of issue of any person in his lifetime or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the lifetime, or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will.'' That the words '' dies without bodily heirs '' are embraced within the Act of 1862, would seem to no longer admit of doubt in this State. The expression '' bodily heirs '' means '' heirs of the body.'' *Seeger* v. *Leakin, Exr.,* 76 Md. 506. In *Mason* v. *Johnson,* 47 Md. 347, the term used was '' shall die without an heir of the body lawfully begotten,'' and it was held to be covered by the Act of 1862. In *Gambrill* v. *Forest Grove Lodge,* 66 Md. 17, it was '' die without heirs,'' and was held to be equivalent to '' die without lineal descendants '' or '' issue,'' and covered by the statute. It is true that the expression used in that case was '' die without heirs,'' but it was conceded that the word '' heirs '' was not used in its technical sense, but was equivalent to lineal descendants or children. The dissenting opinion in that case proceeded on the theory that the word '' heirs '' was, in the connection in which it was used, equivalent to '' heirs of the body '' (as indeed, the opinion of the majority practically did), and it was argued that such being the case, the Act of 1862 did not apply. But the majority of the Court expressly held that it did, and that decision has not only not been disturbed, but it has been expressly recognized in later cases. *Lednum* v. *Cecil,* 76 Md. 149 ; *Hutchins* v. *Pearce,* 80 Md. 434. In *Combs* v. *Combs,* 67 Md. 11, it was said the words '' die without issue of his body lawfully begotten,'' must be construed, by virtue of the Act of 1862, to mean a

definite failure of issue, and to support the limitation over if other words in the will do not prevent that result. In *Gable* v. *Ellender*, 53 Md. 311, this Court held that the word " heirs " meant " heirs of the body," or " issue of the body," in the connection in which it was there used. It is true that case was decided independent of the Act of 1862, as the will was executed prior to its passage, and that it only affected personal property, but it is an authority to show that in determining whether there is a definite or indefinite failure of issue, there may be a good devise over, although the word " heirs " is used in the sense of " heirs of the body." There is much force in the argument that if the limitation over had been upon Mrs. Powell's dying " without issue," it would in fact have only meant her dying without " heirs of her body," and therefore, the words in the will are within the Act of 1862, independent of adjudicated cases. To adopt that view, it is not necessary to say that the terms " issue " and " heirs of the body " are always interchangeable, for of course they are not, but "issue" when a word of limitation, means lineal descendants indefinitely, and hence " *heirs of the body* " (11 *Am. and Eng. Ency.* 869), and the question is whether " bodily heirs," as used in this will, are not " words which may import either a want or a failure of issue of any person in his lifetime, or at the time of his death." But it is useless to discuss this further, for, as we have already said, we are of the opinion the question is settled in this State. If this will had used the term dies " without heirs " instead of " bodily heirs," then it would have been construed to mean " heirs of body," because the devise over is to her brother and his heirs, and it would have been within the letter of the decision in 66 Md. *supra*, and would, under that decision, have been held a good devise over, because it was within the Act of 1862, and hence it would seem to be idle to contend that there is a distinction between the two cases. We are, therefore, of opinion that the will must be construed to mean a want or failure of

bodily heirs in the lifetime, or at the death of Mrs. Powell, and not an indefinite failure.

Under the authorities, she, therefore, takes a fee in the land, and the entire interest in the personalty, defeasible on the contingency of her dying without bodily heirs, and upon the happening of that contingency the ultimate devisee and legatee would take by way of executory devise and bequest. Courts have always been more ready to construe a limitation over, upon dying without heirs, or without issue, to mean a dying without heirs or issue living at the death of the first legatee, in order to support a bequest of personal property over, than in the case of a devise of real estate. This will and the Act of 1862, in terms apply to both real and personal property, and as we are of the opinion they are sufficient to support the devise of the real property, they are necessarily so as to the bequest of the personal property.

We do not find anything in the will which indicates a contrary intention on the part of the testator. Great stress has been laid on the residuary clause above quoted. It is argued that as the division cannot be made until after all legacies are paid the testator evidently intended that the legacies to the daughter should be paid to her in her lifetime. But the answer to that is that Mrs. Powell takes an estate in fee in the realty, and the entire interest in the personalty, defeasible as to both realty and personalty upon the happening of the contingency specified—her dying without bodily heirs. Placing the construction we do upon the language of the will, it is very similar *in its effect*, to the case of *Devecmon* v. *Shaw*, 70 Md. 219. There the opinion of JUDGE ALVEY, who sat below, was adopted by this Court. The testator had devised real estate to his daughter, generally without words of limitation, and had also given her money, stocks and bonds by general words of gift, without restriction or limitation, but he added this provision, " but in case my said daughter should die without leaving any child or children at the time of her death * * * * * then all the real estate and personal es-

tate devised to my said daughter shall go to my sister,"
etc., and the Court held that the daughter took an estate
in fee in the realty and the entire interest in the personalty
defeasible as to both, upon the happening of the contingen-
cies provided for in the will.

Nor do we find anything in the will that would justify us
in reaching the conclusion contended for by the appellee
that the testator intended that the limitation over to the
son should only take effect in the event of his daughter
dying without heirs of her body during the life estate of
her mother. The words "but not until her mother's
death" may have been intended to give, for life, to the
mother, the benefit of *all* the property given the daughter in
the event of the latter dying before her mother, or it may
only have been intended to apply to the property given to
the daughter in which the mother had a life estate. It is
not necessary for us to determine what it did mean, as the
mother is now dead, further than to say we do not think it
reflects upon the question before us.

Mrs. Powell is entitled to the possession of the property,
both real and personal, and the executor therefore should
have paid over to her the stock retained by him. The case
of *Kuykendall* v. *Devccmon*, 78 Md. 537, shows under
what circumstances a Court of Equity will interfere to pro-
tect the contingent interest. It is only upon application
for security for its protection, and upon proof that the con-
tingent interest will be put in jeopardy that the Court will
interfere. The executor has no right to hold the property.

It follows from what we have said that the *pro forma*
decree must be reversed in part, and affirmed in part, and
the cause will be remanded that a decree may be passed in
accordance with this opinion.

> *Decree reversed in part and affirmed
> in part, and cause remanded.
> The costs to be paid out of the
> estate.*

(Decided January 4th, 1898).