# RICHARD B. DORSEY, EXC'R of WM. H. DORSEY, vs. ARABELLA DORSEY.

A testator bequeathed "all his property, both real and personal," with certain specified exceptions, "to his wife;" the furniture she was to dispose of as she saw fit, "and also all the rest of the property," and then in the concluding clause of the will added: "*In case of the death* of both myself and wife, all the property and effects before mentioned as belonging to my wife shall revert to my mother." The wife survived the testator. HELD, that under this will the wife took *an absolute estate* in the property bequeathed to her.

APPEAL from the Orphans Court of Baltimore city.

In this case a petition was filed in the court below by the appellant, the widow of William H. Dorsey, deceased, to ascertain whether under the will of her husband, which was duly admitted to probate, she took the personal property thereby bequeathed absolutely, or only a life estate therein. This will was in the shape of a letter written by the testator to the appellant, his father and executor, and is set out in full in the opinion of this court.

It was asserted by the petition, and admitted in the answer of the executor, that he had delivered to her as her absolute property the furniture mentioned in the will. The petitioner then proved that this will, with the insurance policies mentioned in it and other private papers, was enclosed in a pack-

age and left by the testator with Keighler, his partner, the day before he left Baltimore, with his wife, for the west; that he so left Baltimore on the 7th of April 1854, on the business of his firm, the extent of his journey being to the western borders of Missouri; that he died on his return from this journey, in the city of New York, on the 1st of August 1854; that the Mr. Arthur mentioned in the concluding clause of the will is the father-in-law of the testator, residing in Missouri, with whom also the appellee now resides, and that the testator's mother resides in Baltimore.

The petitioner further offered to prove by Keighler, that the probable value of the testator's claim against the firm of which he was a member is, and was at the execution of the will, $2000, (the executor in his answer claimed it was not less than $6000,) as a fact or circumstance to be taken into consideration by the court in construing the will, but the court excluded the testimony as inadmissible. The court then decided that the widow was entitled absolutely to the entire residue of the testator's personal estate, and passed the order set out in the opinion of this court, from which the executor appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Vernon Dorsey* and *Robert J. Brent* for the appellant.

The first question in this case arises upon the will. The testator bequeathed all his property, real and personal, to his wife, with the exception of "$1250 to each of his sisters and his mother," and the sums necessary to pay certain specified debts. He then describes the property belonging to him, and adds, "the furniture my wife may dispose of as she sees fit; *and also all the rest of the property.*" If the will had gone no further the widow would clearly have the absolute estate, subject to the debts and legacies. But the material inquiry arises on the final clause: "In case of the death of both myself and wife, all the property and effects before mentioned, as belonging to my wife, shall revert to my mother after paying,"

&c. It seems to us that upon the whole context of this will the widow has but a life estate, with a power to dispose of the property either during her life or absolutely, but with a remainder in all to the testator's mother. We maintain this proposition upon the very analogous case of *Smith vs. Bell,* in 6 *Pet.,* 75, decided by Chief Justice Marshall upon a similar will, in which all the authorities are reviewed by that most distinguished judge. The very fact that he gave his widow the *jus disponendi* illustrates our proposition, and demonstrates his own belief that he had not given her an absolute estate by the previous words under which she now claims. Again he says, that at the death of his wife "all the property before mentioned as belonging to my wife shall *revert* to my mother." How could this reverter take place at the death of the widow unless he designed her to take but a life estate? The will then is clear and unequivocal upon its face, and the mother is the ultimate beneficiary of the whole property, subject to the debts and legacies.

But it is supposed our construction may be prevented by the introduction of the parol evidence stated in the record. In the first place we maintain, that no parol evidence can be received to alter or affect the clear and unmistakable intention of the testator as gathered from the whole context of the will. 5 *H. & J.,* 155, *Carroll vs. Norwood.* 7 *G. & J.,* 127, *Negro Cæsar vs. Chew.* 5 *Md. Rep.,* 305, *Walston vs. White.* 2 *Jarman on Wills,* 468. And, *secondly,* we maintain that the parol evidence, if admissible, in no way tends to alter or change the construction of the will or the meaning of the testator. The idea of the appellee seems to be, that as the testator left on a distant journey some two days after the date of his will and took his wife with him, he merely intended to give the property to his mother in case both he and his wife died on the journey. But there is nothing in the parol evidence or on the face of the will so to limit its effect and operation. The mere fact, as proved, that he left for the west two days after the execution of the will and took his wife with him, does not show that at the date of the will he contemplated taking his journey or taking his wife with him. But

even if he had on the face of the will recited that he made it in contemplation of that journey, the will could not be considered as conditional upon his dying during the journey, nor could its construction or effect in any way be affected by such a recital. 9 *Pet.*, 174, *Tarver vs. Tarver.* Moreover this is admitted to be a testamentary paper, therefore the words "in case of my death," used at the commencement of the will, had reference to his death *at any time.* If this interpretation is given to these words at that place, it must also be given to them at the commencement of the last clause, where he uses precisely the same language, "*in case of the death* of both myself and wife." He uses the same words in both cases, and if in the first he did not intend to restrain the operation of the will to the contingency of *his* death at any *particular* time, so in the last, he did not intend to restrain it to the contingency of the death of his *wife* at any particular time, but intended to convey the same meaning as if he had in the respective clauses used the words "after my death," and "after the death of both myself and wife." The will on its face shows that he contemplated that the "*reverter*" of all the property to his mother should take effect unconditionally, "after the death of *himself and his wife,*" whenever those events occurred, and he places the order of their deaths in such a way as to show that he expected his widow to die after him. We see nothing in the parol evidence to change the plain and palpable construction of this will so as to deprive the mother of her estate in remainder. It certainly cannot be maintained that the delivery of the furniture to the widow as her absolute property can affect the rights of the remainderman, or that of the executor to retain and invest money belonging to the remainderman.

If we are right in these views, the court below erred in deciding that the widow was entitled to the payments of the money as her absolute property. Such payments, if ordered at all, ought to have been only on adequate security being given for the benefit of the remainderman, as the life-tenant is proved to reside in Missouri. But we maintain, the order should be to invest the money and pay over the income or dividends only to the life-tenant. *Act of 1798, ch. 101, sub-ch.*

10, *sec.* 11.  1 *Story's Eq.*, *sec.* 603.  2 *Do.*, *secs.* 843 to 846.
6 *G. & J.*, 196, *Evans vs. Iglehart.*  12 *Do.*, 276, *Clagett vs. Crawford.*  5 *Md. Rep.*, 235, *Miller & Mayhew, vs. Williamson, et al.*

*William George Brown* for the appellee, stated, that in the event of a reversal he wished the opinion of this court upon the admissibility of the testimony of Keighler, rejected by the court below, and to show its admissibility, as one of the facts and circumstances surrounding the testator at the date of the will proper to be considered by the court in placing a construction upon the language of the will, cited: 1 *Greenlf. on Ev.*, *sec.* 287, *note* 3, and cases there cited, and *Wigram on Extrinsic Evidence*, 11 to 14.  He then argued:

1st. That the main motive which governed the testator in framing the letter admitted to probate as his will, was to provide for the occurrence of death upon the particular journey, full of hazard, which his wife and himself were about to take, and in the event of his death it was his intention to devise and bequeath to his wife absolutely the residue of his property, provided she survived him.

2nd. That if the language of a part of the will were capable of receiving two constructions, the court would place such a construction upon the ambiguous clause as to make it conform to the general intent, and to reconcile it with other provisions of the will which are free from ambiguity; but it is contended there is no ambiguity in the provisions of this will.

.3rd. That the general intent will prevail in the construction of a will over a particular intent, if there should be any conflict between them.  And as it is sufficiently apparent that the testator's chief and main intent was to secure, in proportion to his means, a competence to his wife, by leaving her all his property after payment of his debts and certain legacies to his mother and sisters, this intent should be gratified, and a construction should not be adopted by which his wife would receive only the interest of $3500 and what may come from the two firms for her life, not much more than the interest upon the sum which he had received from her father.

4th. That the intention of the testator is manifested by the clause, which, in case of his death, bequeaths to his wife *all his property, both real and personal,* with certain specified exceptions: and again, in the latter part of the same provision, declares that *"the furniture my wife may dispose of as she sees fit, and also all the rest of the property."* But it is contended by the appellant that this provision is controlled by the last clause of the will, and that thereby the estate of the wife is cut down to a life estate, with remainder absolutely to the testator's mother. The clause is: *"In case of the death of* both myself and wife, all the property and effects, before mentioned as belonging to my wife, shall revert to my mother." The difficulty arises from the fact that the testator has applied a term of *contingency* to the death of his wife, which is an event *certain* to take place, and to satisfy this term it is necessary to connect with her death some circumstance, *in association with which it is contingent;* that circumstance is naturally *the time* of its happening, and such time is necessarily the death of the testator. Hence it is an established rule, that where a bequest is left A, and *in case of his death* to B, if A survive the testator he takes absolutely. The last clause of the will then, even standing by itself, should be construed to mean, that if the testator's wife died before him his mother should take the share left to her, but if the wife survived, then she is to take absolutely. But when this clause is taken in connection with the rest of the will all doubt ceases, and the wife surviving her husband becomes entitled to the residue absolutely, and not as a mere life estate. 5 *G. & J.,* 101, *Hill vs. Hill.* 1 *Roper on Legacies,* 406. 2 *Strange,* 1261, *Lowfield vs. Stoneham.* 4 *Ves.,* 161, *Hinckley vs. Simmons.* 5 *Do.,* 806, *King vs. Taylor.* 6 *Do.,* 557, *Turner vs. Moor.* 8 *Do.,* 12, *Cambridge vs. Rous. Ibid.,* 410, *Webster vs. Hale.* 18 *Do.,* 291, *Ommaney vs. Bevan.* 1 *Younge & Col.,* 492, *Clarke vs. Lubbock.* 2 *Eq. Cases Ab.,* 344, *Trotter vs. Williams.* 11 *G. & J.,* 328, *Young vs. Robinson.* 4 *Barn. & Ald.,* 574, *Wright vs. Stephens.* 7 *Simons,* 40, *Grigan vs. Baines.* Such a remainder would be void. 1 *Jarman on Wills,* 665, *note* 1.

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order of the orphans court of Baltimore city, passed the 6th day of October 1855, directing the appellant, as executor of the last will and testament of William H. Dorsey, deceased, to pay over to the appellee a certain sum of money which he has in hand, and also "hereafter from time to time pay in like manner over to said Arabella Dorsey, as her absolute property, the balances which he may hereafter have in hand belonging to the estate of said William H. Dorsey, after deducting proper charges, expenses, and any debts which may be due by said estate, if any there should be."

The questions involved in the case arise under the following letter of William H. Dorsey, which was admitted to probate as a testamentary paper:

"*Balto., April 5th,* 1854.

R. B. Dorsey, Esq'r,

*Dear Sir:*—In case of my death, I desire you to act as my executor, and wind up my affairs according to the following directions:

All of my property, both real and personal, I. bequeath to my wife, with the following exceptions, viz:—To my mother and each of my sisters I leave $1250 cash, to be invested for their benefit in some safe and productive stock; six hundred dollars to be applied to the payment of a note for $600 to Johnston & Bros., due August 12, and $110 to pay a note to G. D. Clarke, the jeweller, for a watch: these are all the debts I owe, except small accounts about town. My effects consist of an interest in the houses of Duval, Keighler and Dorsey, and Duval, Rogers & Co., of eight and-a-half per cent. of the profits of each house; the proceeds of two policies of insurance in the New York Mutual, for $7500 and $2500; the furniture of the room in Courtland street, and some 450 acres of land in Clay, Clinton and De Kalb, counties, Missouri.

The furniture my wife may dispose of as she sees fit, and also all the rest of the property. By the articles of co-partner-

ship, upon the death of a partner, those who remain are bound to wind up the concern as speedily as possible.

In the case of the death of both myself and wife, all the property and effects before mentioned, as belonging to my wife, shall revert to my mother, after paying Mr. Arthur $4000, being the amount, principal and interest, I have received from him.                    Yours, truly,

W. H. DORSEY."

On the part of the appellant it is insisted, that the property given by this paper only conferred on the appellee a life estate, whilst on the part of the appellee, (and as was adjudged by the orphans court by the order appealed from,) it is held that the bequest was absolute without remainder over to any one.

In the view of the case which we have, it is unnecessary we should discuss the two other questions presented in the argument, namely, the right of the appellee to introduce parol evidence to show the circumstances attending and surrounding the testator; and the obligation devolving on the orphans court to invest in some safe and productive fund the interest bequeathed, provided the appellee only takes a life estate.

The case principally relied upon by the counsel for the appellant to support his theory of the case, is that of *Smith vs. Bell*, 6 *Peters,* 68. It is a case, in some particulars, analagous to the one now under consideration. The clause in the will which gave rise to the controversy, and which was discussed and decided by the court, was in these words: "I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and disposal absolutely; the remainder after her decease to be for the use of the said Jesse Goodwin."

There, as here, the question was, what kind of estate did the wife of the testator take? The first part of the clause gave her *absolutely* the property; but the difficulty of interpretation arose from the use of the words, "the *remainder* after her decease to be for the use of the said Jesse Goodwin." To

reconcile these inconsistent members of a sentence, and, at the same time, to give efficacy to the intention of the testator, was the office of the court. This was accomplished by giving some meaning to every member of it. If Jesse Goodwin was to enjoy "*the remainder* after her decease," then the first part of the clause must be so construed as to limit the estate of the wife to that of her life. This Chief Justice Marshall considered to be the true meaning of the language employed by the testator, deducing the conclusion, in some degree, from the character of the relation in which the wife and son stood to him. He held it to be natural and proper that the husband and parent should be anxious to give some evidence of his regard and solicitude, both for the wife and the son, and, availing himself of the force of this natural instinct of the human mind, he felt authorised so to interpret the language of the doubtful clause as to give every part of it some meaning, and to the whole that meaning which common sense would impute to the action of a rational being. This is, in substance, the decision of the case; and one, as Judge Marshall conclusively shows, fully justified by those previously had. We adopt the principles of that case and apply them to the one in hand.

The first member of the second paragraph of the paper is in these words: "All my property, both real and personal, I bequeath to my wife, with the following exceptions," &c., and clearly gives the wife an absolute estate. About this there cannot be a doubt; but, if a doubt were possible, the first member of the third paragraph would remove it. In it he says: "*The furniture my wife may dispose of as she sees fit, and also all the rest of the property.*" These portions of the paper, taken together, make the meaning of the testator too obvious for mistake. But, it is said, their apparent meaning is controlled by the following, which is the concluding part of the paper: "*In case of the death of both myself and wife, all the property and effects before mentioned, as belonging to my wife, shall revert to my mother, after paying Mr. Arthur $4000, being the amount, principal and interest, I have received from him.*"

Now the question is, what is the meaning, as here used, of the words, "In case of the death of both myself and wife?"

A few passages from *Roper on Legacies* will satisfactorily dispose of the inquiry.

At *page* 406 of the 1*st Vol.*, it is said: "That wherever a testator has defectively expressed the event upon which a legacy shall go over, yet, if his meaning can be discovered from a reasonable construction of the whole will, the court will effectuate the intention when it is practicable." As to the event to divest a legacy when thus described, "*in case of the death of the legatee,*" without annexing to those terms his dying within any particular period, the same author, at the page above given, remarks: "The words in which such a bequest over is expressed, neither have nor by construction have they received a precise and definite meaning, in which they must be uniformly understood. The expression itself is incorrect, as it applies words of contingency to an event which is certain. No person can with propriety speak of death as a contingent event, which may or may not happen. When therefore a testator so expresses himself, the question is, what he means by that inaccurate expression. He may perhaps have had some contingency in his mind; as that the legatee *was dead at the time he was making the will,* or *might die before the testator,* or before the legacy should be payable, and then the inaccuracy consists in not specifying the period to which the death was to be referred. He might have meant to speak generally of the death whenever it might happen, and then the contingent or conditional words must be rejected, and words of absolute signification must be introduced; and, accordingly, in every instance in which these words have been used, courts have endeavored to collect from the nature and circumstances of the bequest, or the context of the will, in which sense it is most likely this doubtful and ambiguous expression was employed." On page 407, the author, sustained by the numerous authorities which he cites, thus applies the rule: "It is," says he, "a settled rule upon this subject, that if a legacy be given to A generally, "and in case of his death" to B, those expressions, unexplained by the

context of the will, are to be confined to the event of death happening during the life of the testator; so that, if the legatee survive him, *the legacy will immediately vest,* discharged of the executory bequest to B; and parol evidence that the testator used the words in a different sense cannot be admitted."

The clause relied upon by the appellant falls directly within the principle quoted and illustrated in the above citation from *Roper.* Besides, which, we are of the opinion that the whole character of the paper shows it was the intention of the testator to give an absolute estate to his wife if she survived him, and only to confer an estate on his mother, in the event of his wife not surviving him.

*Order affirmed, with costs.*