(Decided February 27th, 1895.)

## ELIZABETH S. HUTCHINS *vs.* JACOB M. PEARCE AND OTHERS.

*Devise and Legacy—Dying without Issue—Will and Codicil Construed Together—Substituted Legacy.*

A testator bequeathed a sum ot money to his daughter A., to be invested and held in trust by a trustee, with a limitation over in case A. should die without issue. *Held*, that A. took an absolute interest defeasible upon her dying without issue living at her death, and such property cannot pass under her will in the event of her so dying.

In such a bequest, the time to which the dying without issue refers is that of the death of the legatee and not of the testator.

Where the property given by the codicil is merely in substitution of that given by the will, it is taken with all its accidents.

By his will a testator bequeathed a sum of money to a trustee to be invested for the benefit of his daughters A. and B., and provided that in case they should die without issue, then such portion "shall become part of my estate and be divided between my surviving heirs." By a codicil, the testator annulled that part of his will directing the trustee to invest a sum of money for his daughters, and "in lieu thereof," gave to his daughter A. certain ground rents, without expressly making them subject to the limitation over, and by the next clause gave to his daughter B. certain other rents, adding "the same rents to be held in trust as directed in my foregoing

will." A. died without issue, leaving a will by which the residue
of her estate was given to the plaintiff. *Held*,

That the devise of the ground rents to A. in the codicil must be read
into the will; that she took in them an equitable estate in fee, sub-
ject to be defeated in the event of her dying without issue living at
the time of her death, and that consequently the rents did not pass
under her will.

Appeal from the Superior Court of Baltimore City.
This was an action of ejectment brought by Miss Hutch-
ins, the residuary devisee under the will of Mary Louisa
Pearce, to recover the property devised to the latter by the
codicil to the will of John B. Pearce. The defendants were
the surviving son and daughter of John B. Pearce and the
husband of the daughter. The clause of the will of Mary
Louisa Pearce, under which the plaintiff claimed, was as fol-
lows: "As my brother and sister are already amply pro-
vided for, and the greater portion of the property which I
now own will probably go to them at my death, under the
will of my father, and as I am especially desirous of pro-
viding for my friend hereinafter mentioned, who has been
my companion for several years and probably will be for
years to come if we shall both live, I devise and bequeath
unto my friend, Elizabeth Sarah Hutchins, daughter of the
late Dr. N. J. Hutchins, of Baltimore County, all my prop-
erty and estate, real, personal and mixed, and all money and
other things of which I may be possessed at the time of
my death, and including my jewels and personal effects not
heretofore disposed of, for her own sole and separate use
absolutely." The case is further stated in the opinion of
the Court.

The action below was submitted to the Court without a
jury, under an agreed statement of facts. The plaintiff
prayed the Court to rule " that if John B. Pearce purchased
the property described in the declaration and made and
published his will, a copy of which has been offered in evi-
dence, and died, leaving surviving him his daughter, M.
Louisa Pearce, and said M. Louisa Pearce made and pub-

lished her will, a copy of which has been offered in evi-
dence, and died ——, and that both of said wills have been
duly proved, and the plaintiff is the residuary devisee men-
tioned in the will of said M. Louisa Pearce, then the plain-
tiff is entitled to recover.   And the Court finds for the
plaintiff."

And the defendants offered the following prayer: That
the Court rules as a matter of law, that by the true con-
struction of the will and codicil thereto of John B. Pearce,
offered in evidence in this case, the plaintiff is not entitled
to recover, under the evidence in this case.

The Court below (RITCHIE, J.) rejected the prayer of the
plaintiff, and granted the prayer of the defendants, and the
plaintiff appealed.

The cause was argued before ROBINSON, C. J., BRYAN,
McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*James McColgan*, for the appellant.

*First.*—By the clear language of the will of John B.
Pearce, the limitation over in case of the death of his daugh-
ters without issue, contained in the fourth paragraph of the
will of John B. Pearce, can only take effect upon the death
of *both* of his daughters without issue—which event has
not happened.

*Second.*—The limitation over by the will of John B.
Pearce contemplates such limitation taking effect only in
case of the death of his daughters during the life of John
B. Pearce, the law favoring the vesting of estates at the
earliest possible period.   *Fairfax* v. *Brown, &c.,* 60 Md.
58–63 ; *Doe* v. *Considine,* 6 Wall. 458–475.

*Third.*—The property devised by the codicil to the will
of John B. Pearce to Mary Louisa Pearce is not subject to
the limitation over in case of her death without issue, it
being the general rule that a gift or devise by a codicil is
not subject to the same limitation as a gift by the will in
the absence of express limitation over.   1 *Jarman,* 150 ;

*Haley* v. *Bannister*, 23 Bevan, 336 ; *Mann* v. *Fuller*, Kay, 626 ; *Hill* v. *Jones*, 37 L. J. Ch. 465 ; *Buchanan* v. *Lloyd*, 64 Md. 308–312 ; *Cole* v. *Wade*, 16 Ves. 46.

The limitations in one clause of a will cannot be applied to another clause in which they are not contained.  1 *Jarman*, 461–463 ; *Biss* v. *Smith*, 2 H & N. 105 ; *Crimson* v. *Downing*, 4 Drewery, 132 ; *Right* v. *Compton*, 9 East, 273. *Thornhill* v. *Harris*, 2 Clark & Fin. 22–36 ; *Edelen* v. *Smoot*, 2 H. & G. 289.

*Fourth.*—The entire clause containing said limitation over is revoked and annulled by the first paragraph of the codicil of said John B. Pearce's will.  Otherwise, no meaning is given to the words, " I annul *all that part of said will in which* I directed," &c.  It is clear that this was the intention of the testator from the fact that he specifically provides that the rents given by the codicil are " to be held in trust as directed in my foregoing will," but says nothing of any limitation over, wherefore, the rule *Expressio unius exclusio est alterius* would apply.

*Fifth.*—The language of the will of M. Louisa Pearce, being an absolute devise of all the residue property not specifically devised or bequeathed, cannot be limited or restrained by any statement of opinion or any supposed intention not expressly and clearly intended to limit the absolute language of devise by her will.  1 *Jarman*, 448 ; *Saumarez* v. *Saumarez*, 4 Mylne & Craig, 339–341 ; *Church* v. *Mundy*, 15 Vesey, 406.

*Daniel M. Thomas* and *William A. Fisher* (with whom was *H. Marcus Denison* on the brief), for the appellees.

The appellees will contend : 1st.  That the estate of Mary Louisa Pearce in the ground rents given her by the codicil to the will of John B. Pearce, was by the terms of his will made defeasible in the event of her dying without issue ; and the happening of that event defeated her estate, and deprived her of the power of disposing of it by her will. 2d. That even if she had such power she did not in fact exercise it.

*As to the First Point.*—The will of the testator indicates a clear intent on his part to place his two daughters on an equal footing. To one he gave ground rents amounting to $1,448.25 per annum, and to the other, ground rents amounting to $1,419.50 per annum; and to each he gave the sum of $5,000. So intent was he upon this that he does not make a separate declaration of the trusts and limitations imposed upon their respective shares, but makes a combined declaration of them, by stating that he appointed his son trustee for them in all the property he had devised to them, " both real and personal, the rents and incomes derived therefrom to be paid to them for their special benefit; and in case my daughters die without issue, then such portion or portions shall become part of my estate and be divided between my surviving heirs."

This phraseology is not strictly accurate, but its meaning is plain. He did not mean that the combined revenues of the two shares was to be paid to the two daughters jointly, but that the income from their respective shares was to be paid to each respectively. And by the limitation over, in the event of his daughters dying without issue, he evidently meant that if either died without issue, her portion, or if both so died, both portions should go over as directed.

The codicil shows no change of his intention in this respect, but that his sole object in making it was to substitute for the $5,000, which he had directed to be invested by his trustee for each daughter, investments made by himself in the form of ground rents; and to make the substituted gift to each greater in value than the original. Following the structural plan of the will, he first designated the rents which he gave to each daughter, and then declared the trust upon which all of them were to be held; using these words: " *The same rents to be held in trust as directed in my foregoing will.*"

The contention of the appellant is, that as the codicil consists of two sentences, each forming a paragraph, the rents given to Mary Louisa being set forth in the first sentence,

and those given to Mrs. Denison being set forth in the latter, and the words, "*the same rents to be held*," &c., follow a colon at the end of the latter sentence, these words are referrible only to the rents mentioned in that sentence, and do not affect the rents given to Mary Louisa by the first sentence. But if this was the intention of the testator, the words used by him are singularly inappropriate and inaccurate, because the trust referred to is a trust, "*for my daughters*," and the result would be that property given to one daughter would be held in trust for both. Except under very peculiar circumstances, the construction of an instrument cannot be affected by mere punctuation. 1 *Jarman on Wills*, ch. 2, p. 33 (6th Am. ed.); *Weatherby* v. *Mister*, 39 Md. 629; *Osborn* v. *Farwell*, 87 Ill. 89; *Ewing* v. *Burnett*, 11 Peters, 54; *Gordon* v. *Gordon*, L. R. 5 H. L. 276; *Herring* v. *Stokes*, 2 Dr. & War. 98; *Arcularius* v. *Geisenhamer*, 25 Barb. 406.

The appellant's contention is that the phrase, " the same rents," &c., are relative words, and by the rules of grammar can apply only to the next antecedent, *i. e.* to the rents mentioned in the last paragraph of the codicil. It is submitted, that even if this be good grammar, it is not good law. Relative words are only referred to the next antecedent when there is no intention apparent to the contrary. *In re. Denny's Estate*, 8 Irish Rep. in Eq. 441; *Frazier's case*, 3 H. & J. 144, &c; *Fenny dem. Collings* v. *Ewestace*, 4 M. & Sel. 58.

The will and the codicil are to be construed as one instrument, and are to be reconciled as far as practicable. *Thomas* v. *Levering*, 73 Md. 451–455. " In order to ascertain the testamentary intention of the testator, it is necessary to examine the provisions of the two papers and see in what respects they are inconsistent with each other." *Johns Hopkins Un.* v. *Pinckney*, 55 Md. 382. When the thing bequeathed by the codicil is a mere substitution for that which is bequeathed by the will, it is taken with all its accidents. *Shaftsbury* v. *Marlborough*, 7 Simons, 237;

1 *Jarm. on Wills*, ch. 7, sec. 5, pages 174–183–186 (6 Am. ed.); *Holliday* v. *Holliday*, 74 Md. 466; 2 *Williams on Executors*, 1296.

But it is claimed for the appellant, that even if our construction of the codicil be correct, the limitation over of these rents, *in the event of the death of Mary Louisa without issue*, was only intended to take effect if she died before the testator; and that as she survived him, the property became hers absolutely. Now, it is submitted that this is just exactly what the testator did not intend. The will shows that he intended to keep his large estate in his own family. In regard to the share of his son, who was married and had a number of children, he had no apprehensions. But in regard to the shares of his daughters, both of whom were then unmarried, he felt it was necessary to make special provisions.

It is submitted, that the case of *Lednum* v. *Cecil*, 76 Md. 149, is a controlling authority to show that the failure of issue, on the part of Mary Louisa Pearce, must be construed to mean a failure of issue before or at her own death. See also—*Gambrill* v. *Forest Grove Lodge*, 66 Md. 17; *Comegys* v. *Jones*, 65 Md. 317; *Devecmon* v. *Shaw*, 70 Md. 225.

In the face of this authority, it is difficult to see how the case of *Fairfax* v. *Brown*, 60 Md. 50, relied on by the appellant's counsel at the trial below, can be held to affect this case. Even if it can be regarded as conflicting with the case of *Lednum* v. *Cecil*, the latter decision, being subsequent in point of time, must control.

It is submitted, however, that *Fairfax* v. *Brown* is an entirely different case from ours. The testator, in that case, having by his will given an estate in fee to his daughters, *by his codicil* provided for alternative limitations over, of their estates, both in the case of their death *without issue*, and of their death, *leaving issue*, and the Court held that these words were to be construed to mean death, with or without issue, as the case might be, *before the death of the*

*testator's widow;* and rested its decision upon the ground that to hold otherwise would convert the estate in fee given to the daughters by the will, into estates for life, and this would " reverse and change the most important provisions of a long and carefully drawn will," and in the absence of clear language to show that this was intended by the testator, the Court declined to put a construction upon the codicil which would effect such a material change in the will.

In this case there is no limitation over in the event of the daughters leaving issue, and the effect of holding that the death referred to was death after that of the testator, would not be to cut down the estates given in fee to estates for life ; and, furthermore, the limitation over is contained in the will, and not in a codicil.   In other respects also the two cases differ from each other.

It is submitted that the case of *Fairfax* v. *Brown* is a peculiar one, and can only be regarded as an authority in cases precisely similar ; *Henderson* v. *Henderson*, 64 Md. 188.

The rule governing the case of *Fairfax* v. *Brown* is stated by Mr. Jarman, and he says it is *a qualification of the general rule.*   It operates when a devise in fee simple is followed by alternative limitations over which, collectively, provide for the event of the death of the devisee under all possible circumstances.   In such cases the words of contingency are read as applying exclusively to the happening of the event in the testator's lifetime, in order to avoid repugnancy, inasmuch as the alternative limitations, if not so qualified and restricted in construction, would reduce the prior devise in fee to an estate for life.   2 *Jarman on Wills*, ch. 49, p. 721 (6th Am. ed.)

The other cases in which the death referred to is held to be a death occurring before that of the testator, are those in which the death is not coupled with any collateral circumstance.   As to these, see 2 *Jarman on Wills*, ch. 48, p. 690 (6th ed.)

In cases where the death is associated with a collateral circumstance, the expositor of the will is placed in no such dilemma; for the testator himself having associated the event of death with a collateral circumstance, full scope may be given to his expressions of contingency without seeking for any restriction in regard to time; and accordingly there seems to be no reason (unless it be found in the context of the will) why the gift over should not take effect in the event of the prior legatee's dying under the circumstances described, *at any time.*   2 *Jarm. on Wills,* ch. 49, page 698 (6th Am. ed.)   " The general rule is that where the context is silent, the words referring to the death of the prior legatee, in some collateral event, apply to the contingency, happening as well *after* as before the testator."   2 *Jarm. on Wills,* ch. 49, page 718–719 (6th Am. ed.)

*As to the Second Point.*—Even if Mary Louisa Pearce be held to have had an absolute indefeasible estate in fee in the property in question, the same did not pass under her will. In construing this will it is the province and duty of the Court to read it in the light of the circumstances in which the testatrix was placed, and the nature of her property and estate.   *Stannard* v. *Barnum,* 51 Md. 440, 452 ; *Hammond* v. *Hammond,* 55 Md. 580.   Any evidence is admissible which in its nature and effect simply explains what the testator has written ; in other words, the question, in expounding a will, is not what the testator meant as distinguished from what his words express, *but simply what is the meaniug of his words.   Warner* v. *Miltenberger,* 21 Md. 264, 212; *Hammond* v. *Hammond,* 55 Md. 581.

When the testatrix made her will she owned absolutely property to the value of $24,000, not acquired under the will of her father.   Under that will she owned the usufruct of ground rents held in trust for her amounting to $1,448.25 per annum, which, capitalized at five per cent. (the basis adopted in the " Admission of Facts"), were worth $28,965.

Under the codicil she *owned the usufruct* of ground rents held in trust for her, amounting to $1,008 per annum, which, capitalized at five per cent., were worth $20,180.

Now, it is evident from her own words, that the testatrix did not intend to give the appellant *all the property that she owned*, in the sense in which she uses the word " *own*," in the former part of the fifth clause of her will. She says the *greater part of what she owned* would probably go to her brother and sister. What she evidently means here is that the property acquired under her father's will and codicil, *being, as we have shown, the greater part of what she owned*, would, by the terms of the will, probably go to them, because it would go to them if they survived her, which she seems to have thought it probable they would do. This was, in her opinion, the destination of that property by the terms of the will. Whether she was right in thinking so is immaterial. The fact that she thought so is evidence that she did not think she had the power to dispose of it by her will. It is further evident, that she did not intend by her will to dispose of what she thought she had no power to dispose of, because it is not to be supposed that she would attempt to do what she thought she had no power to do. In the first part of this fifth clause, she assigns what she considers a sufficient reason for giving what she did to the appellant. Inasmuch as the greater part of what she owned would, by the terms of her father's will, go to her brother and sister, she did not think she would be doing them any injustice by giving the residue to her friend. And she, with sufficient clearness, defines what she did give to her, by describing it as that of which she was *possessed*, as distinguished from that which she *owned*, but did not have in *possession*.

PAGE, J., delivered the opinion of the Court.

This is an action of ejectment, the determination of which depends upon the construction of the last will of John B. Pearce. Mr. Pearce died in 1874, leaving surviving him a son and two daughters. At the time of his death, his son, Jacob M. Pearce, was forty years of age, married and with a family of five children, ranging from one to twelve years

in age.   One of his daughters, Mary Louisa, was thirty-six years of age and unmarried ; the other, Sophia Augusta, who has since intermarried with the defendant, John M. Dennison, was thirty-two years of age, and also unmarried. His will is dated the 23rd of February, 1872, and a codicil thereto, the 18th day of July, 1874.   Mary Louisa Pearce died without having ever married, leaving a last will dated the 16th of June, 1883.

By his will John B. Pearce, after providing for the payment of his debts and funeral expenses, by the second clause bequeathed to his daughter, Mary Louisa, certain ground rents, particularly described, of the total annual value of $1,448, "subject to the trust, however," thereinafter created; and by the third paragraph, to his other daughter, Sophia, certain other ground rents, of the total annual value of $1,419.50, also subject to the same trust.   The fourth paragraph is as follows: " I will and bequeath unto my daughters, Mary Louisa Pearce and Sophia Augusta Pearce, each the sum of five thousand dollars, to be invested in good securities or ground rents, and to be held in trust by my son., J. Myers Pearce, whom I hereby appoint trustee for my daughters, in all the property I have devised to them, both real and personal ; the rents and incomes derived therefrom to be paid to them for their especial benefit ; and in case my daughters die without issue, then such portion or portions shall become part of my estate and be divided between my surviving heirs."   After sundry minor bequests, he then bequeaths the rest of his estate to his son. The codicil is as follows: " I annul all that part of my said will in which I directed my son to invest for my two daughters five thousand dollars each ; and in lieu thereof 'I give and bequeath to my daughter, Louisa, four ground rents on the west side of Oregon street, near Thompson street, in the city of Baltimore, each rent 117 dollars, payable in March and September ; and six rents of 90 dollars each on the east side of Gilmor street, payable half yearly on the 1st of January and the 1st of July.

"And unto my daughter Augusta, I give and bequeath five ground rents on the N. W. corner of Carey and Edmonson streets, each lot 100 dollars annually, payable on the 1st of January and 1st of July, and a rent of 400 dollars on the York turnpike, fronting thereon 100 feet, running back to Barclay street 400 feet, payable quarterly, in May, August, November and February; the same rents to be held in trust as directed in my foregoing will."

The first question that arises is upon the proper construction of the fourth paragraph of the will, and this, we are of opinion, is free from difficulty. Though the testator, in the first clause, uses no words of perpetuity, there is nothing in the will to indicate that he intended his daughters should take anything less than an absolute interest in the property. This, however, is subject to the limitation, that "in case my daughters die without issue, then such portion or portions shall become part of my estate, and be divided between my surviving heirs." The words "die without issue," unless a contrary intention appear by the will, must be construed, since the Act of 1862, ch. 161, to mean a want or failure of issue in the lifetime or at the time of the death of the person so taking. *Lednum* v. *Cecil,* 76 Md. 153 ; *Mason* v. *Johnson,* 47 Md. 355 ; *Devecmon* v. *Shaw,* 70 Md. 224 ; *Gambrill* v. *Forest Grove Lodge,* 66 Md. 17. And we are of opinion that this construction effecutates the intention of the testator, as gathered from a fair examination of the whole instrument when taken in connection with his surroundings and the objects of his bounty. He had three children, a son and two daughters, and to them he bequeaths his entire estate, with unimportant exceptions. The daughters were unmarried ; one of them was thirty-two years of age, the other thirty-six. He must have contemplated the possibility of one or both dying without leaving children, and if that did so occur, it appears to have been his wish that such portions of his property as he had left them should pass to such of his own descendants as might then survive. To make this desire effectual, he created a trust,

which, by the very terms he employs, was not to commence
until ·after his own death, and could not terminate, as to
each portion, until the death of each of the daughters.
This general intent, plainly exhibited as it is by the struc-
tural plan of the will, as well as by· fair interpretation of the
terms employed by the testator, would be entirely frus-
trated by construing the instrument so that the limitation
can take effect only upon the death of the ·daughters or
either of them in the lifetime of the testator. The property,
however, described in the declaration, is part of that which
was devised to Mary Louisa by the codicil, and it therefore
becomes necessary to determine what the nature of the in-
terest was that passed by its provisions.   The terms which
the testator here employs are :  " I annul all that part of said
will in which I directed my son to invest for my two daugh-
tert $5,000 each ;  and in lieu thereof, I give "  *   * (by
two clauses) certain ground rents to each of the daughters ;
and, at the conclusion of the second clause, are these
words :  " The same rents to be held in trust as directed in my
foregoing will."   The appellant, while conceding that these
words apply to the bequests made to both daughters by the
codicil, insists that the property is not subject to the limita-
tions contained in the will.   Now, it is a well settled princi-
ple that " the will and codicil are to be contrued together
as one instrument ; but if there be any conflict or repug-
nancy between them, the codicil  *   * must operate in pref-
erence to the will." *Lee* v. *Pindle*, 12 G. & J., 305 ; *Thomas*
v. *Levering*, 73 Md. 451.   We do not think the codicil
shows a change in the intention of the testator.   It annuls
only that part of the will in which the testator had directed
his son to invest $5,000 for each of his daughters, and in
lieu of this substitutes certain ground rents ; otherwise the
fourth paragraph of the will remains unaltered.   The gifts
to the daughters by the will, were to be subject to a trust,
of which the purpose was, to more effectually secure the
retention of his property in his own family, and what is be-
stowed by the codicil is to be held in trust in the same

manner.   For the trust so created by the codicil, it would
be difficult to assign any sufficient reason that can carry
with it the imputation of an intention different from that to
be gathered from the will itself.   The will and codicil are
inconsistent only in respect to the description of the prop-
erty bestowed.   *Johns Hopkins Univ.* v. *Pinckney*, 55 Md.
381.   The things bequeathed by the codicil are mere
substitutions for that which was given by the will, and
must be " taken with all its accidents."   *Shaftsbury* v.
*Marlborough*, 7 Simons, 237.   This was not the case in
*Buchanan* v. *Lloyd*, 64 Md. 308.   There the Court said,
" there are no materials in the codicil or in the will and
codicil together, of which we can predicate a limitation over
to the children of Mrs. Winder," and to so construe the
codicil would have the effect to curtail the effect and opera-
tion of the residuary clause in the will.   A gift by the will is
not to be cut down by uncertain expressions.   *Johns H. U.*
v. *Pinckney, supra ; Mann* v. *Fuller*, Kay, 624.   In this
case, to carry out the general intention as gathered from a
full examination of the entire will and the codicil, the de-
vise of the ground rents in the codicil must be read into the
fourth paragraph of the will, and the daughters respectively
will take an equitable estate in fee, subject to be defeated in
the event of their dying without issue living at the time of
their respective deaths.   *Thomas* v. *Levering*, 73 Md. 455.
We think there is nothing in conflict with what we have said
in *Fairfax* v. *Brown*, 60 Md. 58 ; *Dorsey* v. *Dorsey*, 9 Md.
40, or in *Hill* v. *Hill*, 5 G. & J. 88.   The decision in *Fair-
fax* v. *Brown* was based upon the intention of the testator
as indicated by the particular language of the will.   The
Court said, " after giving  *   * an estate in fee to his chil-
dren  *   * it would not be a fair presumption that he in-
tended to reduce the estate to an estate for life, if the terms
used were of dubious and uncertain meaning."   In *Dorsey*
v. *Dorsey*, the devise was to his wife, " and in case of the
death of both myself and wife, &c.," and it was held that
such expressions unexplained are to be confined to the

event of death happening during the life of the testator. And in the same case the Court also said that, from the "whole character of the paper, such was the intention of the testator.".

From what we have said it follows that we find no error in the ruling of the Court below, and the judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided February 28th, 1895.)