# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 23, 1907.

HANNAH S. LUMPKIN ET AL.

VS.

HARRIET VIRGINIA LUMPKIN ET AL.

*Wm. Milnes Maloy* for petitioners.

*W. Burns Trundle* for respondents.

GORTER, J.—

Robert G. Lumpkin, on the 22nd day of January, 1900, executed his last will and testament. By the first clause thereof he gave to his wife absolutely his dwelling No. 1416 W. Lexington street, with the furniture therein, etc.; also during her natural life four-tenths of his estate, real and personal, including in said four-tenths at a capitalization of five per cent., certain enumerated ground rents, aggregating an annual income of $2,868, and concludes the clause as follows: "And at my wife's death, these ground rents are to be equally divided between my children, or their children, share and share alike to my children."

By the second clause of his will he left to his son, Edward T. Lumpkin, one-tenth of his estate, "less whatever he shall owe me at the time of my death—and my gold watch and chain."

By the third clause of his will he left to his son, John F. Lumpkin, one-tenth of his estate "less whatever he shall owe me at the time of my death, and $500 to be deducted from the interest that may have accrued on his notes due me."

By the fourth clause of his will he left to his daughter, Emma V. Clark, one-tenth of his estate, "and his affection and love."

By the fifth clause of his will he left his son, Robert G. L. Lumpkin, one-tenth of his estate, and "my bookcase in the dining room, with such books from my library as he and his mother may agree upon, less whatever he may be owing me."

By the sixth clause of his will he left to his son, William W. Lumpkin, one-tenth of his estate, "less whatever he may be owing me, and such part of my wardrobe as may be useful to him."

By the seventh clause of his will he gave one-twentieth of his estate in trust to his granddaughter, Sue W. Clark, until she attains twenty-one years, and also $1,000 out of the remaining one-twentieth.

By the eighth clause of his will he gave one-twentieth of his estate, less the $1,000, in trust for his son Edward's children. After concluding the subject matter of this clause, he adds the provision that has given rise to the question now to be considered. The words are as follows: "*In case of either of my children's death without leaving lawful issue, then I will and direct that their portion or inheritance in my estate shall be equally divided between my wife and my surviving children.*"

510

Robert G. Lumpkin, the testator, died August 10th, 1905. His wife and his five children survived him. William W. Lumpkin, since the death of his father, has died, leaving a widow surviving him, but no children or descendants. William's widow claims that under the clause in question, the death of a child must have taken place prior to the death of the testator in order to give any effect to the clause, and that as her husband outlived his father, he became the owner absolutely of one-tenth of his father's estate under the sixth clause of his will.

The other children and the widow of the testator claim that if any of the children died at any time, whether before or after the testator's death, without leaving issue, his or her interest under the father's will would pass to the widow of the testator and the other children; that William had an absolute estate in the one-tenth of his father's estate, defeasible upon his dying without issue, and as the contingency has happened, they are entitled to his estate.

I have been referred to a great many cases by the respective counsel, bearing upon both sides of this controversy, all of which I have endeavored to read carefully so as to deduce correct conclusions applicable to the case.

The case of Edwards, 15 Beavans Reports, p. 357, decided in 1852, seems to be the leading case upon this subject, at least one frequently referred to by later decisions, not always, however, with approval as to all the doctrines therein stated.

In that case the testator, by his will, made in 1840, devised and bequeathed his freehold and leasehold estates to his wife for life. He then made provision for his three children out of his property. He then provided: "If my dear wife shall remain my widow, then my said trustees, or the survivor of them, shall assign and transfer to each of my children their shares, immediately after her death, and as soon as they arrive to twenty-one years of age, and they, my three children, shall pay to their mother as above mentioned (meaning an annuity in case of marriage). Further my will and meaning is, that if one of my three children shall die, and leaving no children born in wedlock, his or her share shall be equally divided between the other two, and their heirs, forever; and if two of my children shall die, and leaving no children born in wedlock, their shares shall go to the surviving one and his or her heirs forever."

The testator died in 1841—his widow died in 1845, without having married. John, his eldest son, attained twenty-one in 1848, and he died without issue in 1850, having devised his estate to his wife for life, with remainder to his brother and sister. The brother and sister claimed the estate devised to their brother, John, by virtue of the conditions contained in their father's will, and they filed this special case against the widow of John Edwards, and a trustee.

The question was whether John Edwards did or did not, under the circumstances aforesaid, take a fee in the freehold and an absolute interest in the leasehold, devised and bequeathed to him, so as to be capable of devising and bequeathing the same. The Master of the Rolls said: "There are four classes of cases in which questions of this description arise."

1st. A gift to A, and if he shall die, then to B.

2nd. A gift to A, and if he shall die without leaving a child, to B.   *After Life Estates.*

3rd. A gift to one for life, and, after his decease, to A, and, if A shall die, then to B.

4th. A gift to one for life, and after his decease, to A, and if A shall die without leaving a child, then to B."

As to the first, as death is certain and not a contingency, the period referred to is the death of the testator. And the bequest should be read somewhat to this effect: a bequest to A, but, if A shall die before the bequest becomes vested in him, then to B, and the consequence is that if A survive the testator he takes an absolute vested interest, and not a life estate in the remainder to B.

As to the second, there is a manifest distinction. There the event spoken of on which the legacy is to go over, is not a certain but a contingent event; it is not in the case of the death of A, but in the case of his death without children, and here it would be importing a meaning, and adding words to the will, if it were to be con-

strued to import, as a condition which was to entitle B to take, that the death of A without children must happen before some such particular period.

In these cases, therefore, it has always been held, that if at any time, whether before or after the death of the testator; A should die without leaving a child, the gift overtakes effect and the legacy vests in B. This is established in the case of Allen vs. Farthing, mentioned in 2 Maddock, 310, but reported only in 2 Jarmanon Wills, 688.

In the third class of cases, where a previous life estate is given, the rule which applies to the first class applies equally, though the application of it fixes a different time. In the first case the rule is, if A dies before the period of possession or payment, that is, before the death of the testator, the legacy goes to B. In this the third case the will is the same, if A dies before the period of possession or payment, i. e., before the death of the life tenant, the legacy goes to B.

As to the fourth class. Where a life estate is given, and on its determination, the subject of it is given to A, with a direction that if he shall die leaving no child, his share shall go to B, it is obvious that the event of death without leaving a child may be applied either to the period of distribution or to any point of time, before or after that period whenever it may occur. It was held that these words must be construed to refer to the occurring of the event before the period of distribution, in the absence of words indicating a contrary intention.

The case now under consideration seems to fall under the second class. The clause in question in Mr. Lumpkin's will refers only to the one-tenth portions to the children under the second, third, fourth, fifth and sixth clauses of the will.

It does not refer to the interest that the children would take upon the death of the widow in the four-tenths left to her for life, for she is one of those who would take should a child die without issue.

In the case of O'Mahoney vs. Burdett, L. R., 7 H. L., 388, the rule in regard to the second class of cases is approved, and on page 395 of the report, set forth at large. The fourth

rule, however, is denied, and it is shown that the cases that the Master of the Rolls relied on were where there were provisions, both as to the devisee or legatee dying with issue or without issue, one or the other of which was bound to occur, and where the intent, as shown by the provisions, of the particular wills under consideration, showed that the contingency was to take place before or at the time the life estate terminated.

In the same volume, at page 408, the case of Ingram vs. Soutten, the fourth rule, as laid down in Edwards vs. Edwards, was repudiated. In the recent English Text Book, "Law of Wills," Theobald, at page 633, we find the law on this subject stated as follows: "If there is an immediate gift to A, and if he died without issue over, the gift over takes effect upon the death of A without issue at any time, whether before or after the testator."

2 Mad., 310, Farthing vs. Allen.

2 Jarman on Wills, 1596.

4 DeG. & Smith, 252 Smith vs. Stewart.

23 L. J. Ch., 489, Cotton vs. Cotton.

8 Equity 283, Bowers vs. Bowers, 5 Ch., 244.

13 Eq., 196, Else vs. Else.

2 K. & J., 705, Varley vs. Win.

1 Ir., 299, Woodroofe vs. Woodroofe.

1903, A. C., 491, Duffill vs Duffill.

Similarly if the gift is future as for A's life and then to B, and if B dies without issue over, the gift over takes effect upon the death of B, without issue at any time, whether before or after the tenant for life.

O'Mahoney vs. Burdett, L. R., 7 H. L., 388.

Ingram vs. Soutten, L. R., 7 H. L., 408.

Overruling fourth rule in Edwards vs. Edwards, 15 Beavan, 357.

The sixth clause of the will standing alone, gave to William W. Lumpkin, a fee-simple estate in the real estate thereby devised, and an absolute estate in the personal property thereby bequeathed. Act 1825, Ch. 119, Code Art. 93, Sec. 321.

What effect has the clause now under consideration upon that estate? At common law, a devise to A and his heirs and assigns, and if A die without issue to B, created an estate tail

by implication in A, and B took a contingent remainder in the subject of the devisee upon the failure of the heirs of the body of A.

Dallam vs. Dallam, 7 H. & J., 244.

So that at common law William would have taken an estate tail with remainder in his mother and brothers and sister.

But by virtue of the Act of 1786, Ch. 45 (to Direct Descents), Code Art. 46, Sec. 1, &c., and the Act of 1782, Ch. 23, Code Art. —, Sec. —, giving the right to convey fee tail general estates, it has been held, a fee tail general estate is converted into a fee simple. That as it, by virtue of these Acts possessed all the qualities of a fee-simple estate, it descends as such, is devisable as such, and can be conveyed as such. That as all estates are known by their properties, as a tree by its fruit, and as a fee tail general is converted into all the properties of a fee-simple estate, it is a fee-simple estate.

1 H. & G., 132, Newton vs. Griffith.

Prior to the Act of 1861-2, Chapter 161, and after the conversion by statute of a fee tail into a fee simple, the limitation over in the case of a death of one of the children of Robert G. Lumpkin, without issue, would have been void, as too remote, the construction upon these words having, by the courts, been made to mean an indefinite failure of issue, the executory devise limited after the fee simple would have violated the rule against perpetuities.

Now, by this Act these words are held to mean a failure of issue at the time of the death of a devisee. Even prior to the Act of 1861-2, Ch. 161, this construction was put upon like words in the case of a bequest of personal property.

It, therefore, seems that before the Act of 1861-2, words providing for limitations over in the case of the first taker dying without issue, or in case of his death without leaving lawful issue, was construed to mean, not a failure of issue during the lifetime of the testator—but an indefinite failure of issue.

It is interesting to note that where, in a will, a limitation is made, property shall pass over upon the death of a person without leaving issue, two

lines of decisions, entirely disregarding the literal and natural meaning of the words, have gone in opposite directions; one to say that the clause meant a failure of issue indefinitely in the future, and the other that it meant a failure of issue upon the death of the first taker, prior to the death of the testator.

The latter direction seems to have been taken by the Pennsylvania and New York cases, while the English and Maryland cases seemed to have followed the former. I am inclined to think possibly if the courts of Pennsylvania and New York were called upon to construe the meaning of the clause under discussion, they would reach the conclusion that the time of the death of the Lumpkin children, as fixed by said clause, was prior to the death of the testator.

I say this after reading the opinion of Judge Sharswood, in 92 Pa., St., 514, Nuckley's appeal, and the case of Washbon vs. Cope, 144 N. Y., 287. In Nork, however, a well-considered case, that of the matter of N. Y. L. & W. R. Co., 105, N. Y., 89, the limitations on this doctrine even in New York are given.

It says: "But it cannot be denied that there are several cases holding that where there is simply a devise to A in fee, and in the event of his dying without issue then to B, the death referred to is a death in the lifetime of the testator, and if A survives, then he takes an absolute and indefeasible estate in fee. Such appears to be the rule in Pennsylvania, and the same has been adopted in this court (Quackenbos vs. Kingsland, 102, N. Y., 128), and was recognized in Vanderzee vs. Slingerland (103 N. Y., 47).

But in that case the learned judge says the rule established by the courts applies only when the context of the will is silent and affords no indication of an intention, other than that disclosed by the words of the absolute gift, followed by a gift over in the case of death, or of death without issue, and indeed the tendency is to lay hold of slight circumstances in the will, to vary the construction and give effect to language according to its natural import. On the other hand, the English and Maryland courts have held words like those in question to mean an indefinite failure of issue.

In the case of Dallam vs. Dallam, 7 H. & J., page 236, it is said: That it is established by the authority of more than fifty cases, that whenever there is a devise of real estate to one and his heirs, with a limitations over if he should die without issue; the words without issue means an indefinite failure of issue, that is, not a failure of issue at the time of the death of the devisee (much less of the testator), but a failure whenever they shall become extinct, without reference to any particular time or event.

See also the reference to the thirty cases cited in Venable on Real Property, p. 86. Indeed, every lawyer knows that prior to the Act of 1861-2, Chapter 161, the construction was made which caused the passage of the law. The following Maryland cases bear sufficiently upon the point now under discussion to be referred to:

Hill vs. Hill, 5 G. & J. 87.

Dorsey vs. Dorsey, 9 Md., 40.

Hammett vs. Hammett, 43 Md., 307.

Mason vs. Johnson, 47 Md., 315, 355.

Fairfax vs. Brown, 60 Md., 58.

Engel vs. Geiger, 65 Md., 539.

Gambrill vs. Forrest, 66 Md., 17.

Devecmon vs. Shaw, 70 Md., 222.

Lednum vs. Cecil, 76 Md., 150.

Hutchens vs. Pearce, 80 Md., 444.

Anderson vs. Brown, 84 Md., 261.

Waybright vs. Powell, 86 Md., 577.

Wilson vs. Bull, 97 Md., 128.

In the case of Hill vs. Hill, 5 G. & J., 87, an estate for life was left to two daughters and on their death to O, his heirs and assigns, forever, and in case of his death to V. O outlived the two daughters and took the estate and remained in possession until he died. Held, that the true construction of the will was, as O was living at the termination of the estate of the two sisters, he took an absolute estate in fee, and the limitation over to V failed.

This case is within the third rule of the Master of the Rolls, as laid down in Edwards vs. Edwards. A gift to one for life, and after his death to A, and if A shall die, then to B, death here means death before the life tenant or before possession.

In the case of Dorsey vs. Dorsey, 9 Md., 31, a testator willed his property "to his wife," the furniture she was to dispose of as she saw fit, "and also all the rest of his property," and then in the concluding clause of the will, added: "In case of the death of both myself and wife, all the property before mentioned as belonging to my wife shall revert to my mother." The wife survived the testator. Held, that she took an absolute estate in the property willed to her. This case is within the first rule of Edwards vs. Edwards.

"A gift to A, and if he shall die, then to B." The death is certain and the contingency is to die before the death of the testator.

In the case of Hammett vs. Hammett, 43 Md., 307, the testator left certain property to his wife during the time she should remain a widow, for the support of herself and children. If she should marry again, he said, "I devise the same to my two children equally, and should one of them die, the property to go to the survivor, and in the event of the decease of both, then the property to go to my brother, etc." The wife married again, both children survived and had issue. Held, that the children surviving the marriage, held absolutely.

This case falls within the third rule of Edwards vs. Edwards and the meaning is clear, that the testator did not intend to cut off the children of his children. The testator only speaks of their death without any contingency, which under the said third rule limits it to the marriage of the widow.

In the case of Mason vs. Johnson, 47 Md., 347, Lovey Johnson devised the farm on which he then lived to his son and two daughters, to be equally divided between them, "and in case either of them shall die without an heir of their body, lawfully begotten, then I devise the share of the one so dying to the survivors or survivor of them." They all survived the testator, then one daughter died leaving a husband, but no heir of the body. Held, she took under the laws of Maryland a defeasible fee. The words are very similar to those used in the Lumpkin will. The question we are now passing upon does not seem to have even been suggested.

In the case of Fairfax vs. Brown, 60 Md., 50, the testator gave his estate to his wife for life, and at her death, after giving certain portions to his son, he devised the residue to trus-

tees for his daughter,- without words of limitation of perpetuity. He made a codicil to his will in the following words: "It is my will and desire and I hereby direct that in the event of the death of either of my children, without lawful issue living at the time of his or her death, that his or her whole share or interest in my estate and property shall revert to and become part of my estate, to be distributed and inherited among my surviving children equally. But in the event of such issue, said deceased child's part or share of my estate to go to and be held in trust for the only use and benefit of said issue."

This case comes nearer falling under the fourth class in Edwards vs Edwards. That is a gift to one for life, and after his decease to A, and if A shall die without issue to B. But it does not really fall under this class for it provides for both contingencies, dying with issue and dying without issue, and as one must necessarily die with or without issue, the case falls under that class of cases referred to in O'Mahoney vs. Burdett, I. R., 7 H. L. 388, (quoted in the opinion), which he says the fourth rule of Edwards vs. Edwards, is erroneously based on; thus drawing the distinction between the cases where provisions are made both for dying with issue and dying without issue. The court, in Fairfax vs. Brown, held that the death, under the terms and general intent pervading the will meant death before the time of distribution or before the death of the life tenant, and that when one of the daughters survived the mother, she took an absolute estate in fee simple.

In the case of Engel vs. Geiger, 65 Md., 539, a man gave his property to his widow for life, upon her death he directed that it be divided among his eleven children, naming them, "or their share to the children of them that may have died." The only possible question in this case was, whether the death of the child was to be referred to the life-time of the testator or of the life tenant, and it was held to be the latter. This case can certainly be no authority for the petitioner. On the contrary Judge Alvey, speaking of the rule relied on by the petitioner, says: Page 544, "As a general rule it is certainly true that in the case of an immediate gift, with a bequest over in the event of the death of the first lega-

tee, the event of death is referable to the life time of the testator. But it is explicitly laid down as text book law that this construction is only made *ex necessitate rei*, from the absence of any other period to which the word denoting the event of death can be referred."

The will in the case of Gambrill vs. Forrest, in 66 Md., 17, was as follows: "I give and bequeath unto my grandchildren, Peter and Pinkney, all my real estate, in case either die without heirs, his portion shall go to his mother." Peter died after the testator, unmarried, and without issue, *Held*, that he took a fee defeasible on the contingency of his dying without issue living at the time of his death, with a valid executory devise to his mother.

The words in this will and the Lumpkin will are alike. This case falls under the second class in Edwards vs. Edwards. "A gift to A, and if he die without issue to B." The contingency is dying without issue, whenever that occurs.

To the same effect is the case in 70 Md., 222, Devecmon vs. Shaw.

To the same effect is the case of Lednum vs. Cecil, 76 Md. 150. Its provisions fall under the second class in Edwards vs. Edwards, and the estate given was held to be a defeasible fee, defeasible if at the time of the death of the devisee she had no issue.

The case of Hutchens vs. Pearce, 80 Md., 434, is possibly the strongest case in Maryland to establish the doctrine, that when there is a limitation over in case of the first taker dying without issue, the death of the devisee or legatee is meant, and not that of the testator, because in this case the question was clearly submitted to the court and argued by the counsel. The testator bequeathed money to his daughter with a limitation over in case she should die without issue. *Held*, that the time to which the dying without issue refers, is that of the death of the legatee and not the testator. The case falls within the second class.

To the same effect is the case of Waybright vs. Powell, 86 Md., 577.

In the case of Wilson vs. Bull, 97 Md., 137, the Court of Appeals would not even limit the time to the life of a preceding life estate, but said that the will meant what it said, that if,

when the devisee died, he left no issue, the estate was to go over.

The Court, on p. 137, said: "If he had intended that those he named as the survivors or survivor of the children, should be ascertained and fixed at any particular time, is it not almost certain he would have so provided? He failed, however, to make any express provision to that effect. He could have said that the share of a child dying without issue shall go to my children who are surviving at my death or at the death of my widow. But not having made any such provision, we may conclude he intended that *whenever* one of his children should die leaving no child or children surviving, *then* his remaining children or his surviving children should take the share of the child so dying." This case seems to fall under the fourth class, but is decided in accordance with the rule of O'Mahoney vs. Burdett.

I think the context of the will itself indicates that the testator intended to give his children a fee-simple estate defeasible upon their dying without issue.

1. The will speaks from the time of the death of the testator. There is no provision in the will that does not contemplate its operation to take effect after the death of the testator.

2. The provision in question speaks of the child's portion or inheritance," indicating that the child must be seized or possessed of its portion or inheritance upon the occurring of the contingency. This, of course, could only take place after the testator's death.

3. The will was prepared with the Act of 1861-2 in effect, declaring the meaning of such words and confining them to the death of the legatee or devisee.

4. The natural meaning of the words indicate the intent. Thus the principles of law applicable to the construction of wills, as well as to the context of the will we are considering, have led me to the conclusion that the children of Robert G. Lumpkin took a fee in the property left them under the clauses of his will from the second to the sixth, both inclusive, defeasible upon their death at any time without issue. I will sign an order or decree carrying out the above views.